WALDORF-ASTORIA HOTEL COMPANY, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

New York (city of) — public hack stands — validity of ordinance establishing hack stands in public streets in front of hotels and private property.

1. By virtue of its power to regulate the use of streets and sidewalks, and to regulate hackmen, the board of aldermen of New York may provide for public hack stands in the city streets, and may prescribe the length of time that hackmen may stand thereat. But it is not within the power of the municipality to authorize the creation or maintenance of a hack stand of such a nature as to interfere with the ingress and egress from abutting property.

2. The public hack ordinance, approved by the mayor June 2, 1913, is authorized so far as it attempts to establish cab stands in the public streets; such proposed use of the streets in front of private property does not involve an impairment of the easements of the abutting owner, and such stand may be maintained alongside of the curb adjacent to hotel property without the consent of the occupant.

3. If in the establishment and maintenance of such stands under the ordinance cases arise in which the prescribed width of the passageway from the street to the hotel which must be maintained is actually insufficient, and a hack stand as established by the mayor unreasonably obstructs access to a hotel, the proprietors may seek redress in the courts against the particular method of enforcing the ordinance which leads to results infringing upon their rights.

*Waldorf-Astoria Hotel Co.* v. *City of New York*, 159 App. Div. 888, affirmed.

(Argued February 25, 1914; decided June 9, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 15, 1914, which affirmed an order of Special Term denying a motion to continue *pendente lite* a preliminary injunction restraining defendants from enforcing the provisions of the public hack ordinance of the city of New York.

The order granting permission to appeal certifies the following questions of law to this court:

"I. May public hack stands, as defined in the public hack ordinance, adopted by the board of aldermen of the city of New York, and approved by the mayor of said city, June 2nd, 1913, be located and maintained alongside the curb adjacent to the property of the plaintiff mentioned in the complaint and known as the Waldorf-Astoria Hotel, in the city of New York and used by the plaintiff for hotel purposes, without the consent and against the protest of the plaintiff?

"II. Is section 3 of article V of the public hack ordinance, in so far as it attempts to authorize the location and maintenance of public hack stands alongside the curb adjacent to the property leased to and occupied and used by the plaintiff as a hotel, without the consent and against the protest of the plaintiff, a valid and lawful enactment?"

The facts, so far as material, are stated in the opinion.

*Edgar T. Brackett, Henry Bennett Leary, W. M. Goodbody* and *Francis S. Hutchins* for appellant. That portion of the ordinance reading as follows: "The mayor is hereby authorized to locate and designate as public hack stands the space alongside the curb adjacent to property used as public parks, public buildings, railroad stations, steamship and ferry landings, hotels, restaurants, theatres, and the center of any street or avenue where the roadway, exclusive of the sidewalk, is thirty feet in width or more," is unconstitutional and void, and the questions

certified to this court must be answered in the negative. (*Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; 3 Dillon on Mun. Corp. [5th ed.] § 1126; *City of New York* v. *Reesing*, 38 Misc. Rep. 129; *Matter of Feigle*, 36 Misc. Rep. 27; *People ex rel.* v. *Mayor*, 59 How. Pr. 277; *Odell* v. *Bretney*, 93 App. Div. 607; *Hefferon* v. *Taxicab Co.*, 146 App. Div. 311; *Cohen* v. *Mayor*, 113 N. Y. 532.) Neither the city, nor the legislature, can devote the streets inconsistent with street purposes, without the permission of the abutting owners and compensation. (*Story* v. *Elevated Ry.*, 90 N. Y. 122; *Mahady* v. *Bushwick*, 91 N. Y. 148, 153; *Taylor* v. *Metropolitan Co.*, 50 N. Y. Super. Ct. 357; *Matter of Gilbert E. R. Co.*, 38 Hun, 438; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; *Welsh* v. *Wilson*, 101 N. Y. 254; *Hatfield* v. *Straus*, 189 N. Y. 208; *O'Reilly* v. *Mayor*, 59 How. Pr. 277; *Mayor* v. *Campbell*, 59 How. Pr. 333; *People ex rel.* v. *Brookfield*, 6 App. Div. 398.) The lessee of a hotel property may prevent the establishment in front of his hotel of a hack stand by the municipal authorities. (*McCaffrey* v. *Smith*, 41 Hun, 117.) The right of an owner or occupant of a city or village lot to the use of a street and to prevent its obstruction does not depend on his ownership of the soil of the street, but rests upon the fact that the property he owns or occupies abuts upon a public highway. (*Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313; *De Georfay* v. *Merchants*, 179 Mo. 698; *Story* v. *Elevated Ry. Co.*, 99 N. Y. 122; *Donovan* v. *Penn.*, 199 U. S. 279; *City* v. *Rice*, 198 N. Y. 124; *Ackerman* v. *True*, 175 N. Y. 353.) The ordinance is void in that it bears unequally, discriminates against the plaintiff as an occupant of a hotel and deprives it of the equal protection of the laws in violation of the fourteenth amendment to the Federal Constitution. (*Missouri* v. *Lewis*, 101 U. S. 22; *Barbier* v. *Connelly*, 113 U. S. 27; *M. P. R. R. Co.* v. *Haines*, 115 U. S. 512; *Gick Wo* v. *Hopkins*, 118 U. S. 356; *Hayes* v. *Missouri*, 120 U. S. 68; *Ritchie* v.

*People*, 155 Ill. 98; *Railway* v. *Ellis*, 165 U. S. 150; *State* v. *Loomis*, 115 Mo. 307; *Van Zandt* v. *Waddel*, 2 Yerg. 260; *People* v. *Van de Carr*, 91 App. Div. 20.)

*Frank L. Polk, Corporation Counsel, Terence Farley* and *George P. Nicholson* for respondents. Hackney coaches and public hack stands are of very ancient origin. They existed in England long before the Revolution. The right to maintain them, for the benefit of the public, so far as we can learn, has never been disputed in the English courts. They were always considered as a legitimate street use and not an usurpation of the rights of the abutting owners in the public highways. (*Masterson* v. *Short*, 7 Robt. 241; *Bogardus* v. *Trinity Church*, 4 Paige, 178, 197; *Cutting* v. *Cutting*, 86 N. Y. 522; *Waters & Co.* v. *Gerard*, 189 N. Y. 302; *Adler* v. *M. E. R. Co.*, 138 N. Y. 173.) The city of New York has the right, both under its ancient charters and the authority delegated to it by the legislature, to establish hack stands in the public highway, provided, of course, that the constitutional rights of the abutting owners are not infringed. (*Barnes* v. *District of Columbia*, 91 U. S. 540; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *City R. Co.* v. *Citizens' St. R. Co.*, 166 U. S. 557; *Sauer* v. *City of New York*, 206 U. S. 536; *Sheehy* v. *Clausen*, 26 Misc. Rep. 269; 42 App. Div. 622; *Turl* v. *N. Y. Contracting Co.*, 46 Misc. Rep. 164; *Milhau* v. *Sharp*, 15 Barb. 103; 27 N. Y. 611; *People* v. *Thompson*, 65 How. Pr. 407; 32 Hun, 93; *People* v. *Dwyer*, 27 Hun, 548; 90 N. Y. 402; *Johnson* v. *Thomson-Houston Electric Co.*, 54 Hun, 469; *Clarke* v. *Blackmar*, 47 N. Y. 150; *Reining* v. *N. Y., etc., R. Co.*, 128 N. Y. 157.) The establishment of a public hack stand in front of the plaintiff's premises, in accordance with the new ordinance, will not, as the authorities point out, amount to a nuisance. (*Babbage* v. *Powers*, 130 N. Y. 281; *Jorgensen* v. *Squires*, 144 N. Y. 280; *Tinker* v. *N. Y., O. & W. R. Co.*, 157

N. Y. 312; *Willis Cab Co.* v. *Abbage,* 67 Misc. Rep. 568; *N. Y. Taxicab Co.* v. *Hawk & Witherbee,* 68 Misc. Rep. 555; *U. S. Restaurant Co.* v. *Schulte,* 67 Misc. Rep. 633; 3 Dillon Mun. Corp. [5th ed.] § 1167; *F. A. Coach Co.* v. *City of New York,* 194 N. Y. 19.)

WILLARD BARTLETT, Ch. J.    This is an action to procure an adjudication that the public hack ordinance approved by the mayor of the city of New York on June 2nd, 1913, is unconstitutional and void, and to enjoin the defendants from enforcing the provisions of such ordinance and from interfering with the rights and privileges previously granted to the plaintiff under prior ordinances of the city of New York relating to the same subject-matter.

In cases of this character, where the appeal is from an interlocutory order by virtue of an allowance by the Appellate Division, the appeal brings up for review only the questions certified by the court below.  (Code Civil Procedure, § 190, subd. 2.)   We are, therefore, restricted to a consideration of the precise questions formulated by the Appellate Division; and it will be perceived that these questions relate to the validity of the public hack ordinance of June 2nd, 1913, only so far as it attempts to authorize the maintenance of a public hack stand alongside of the curb adjacent to the hotel property occupied by the plaintiff without the plaintiff's consent.   It will, therefore, be unnecessary to consider many of the objections to the ordinance which were discussed in the elaborate and careful opinion of the judge who heard the case at Special Term; but we shall confine ourselves to a consideration of the question upon which there was a difference of opinion in the Appellate Division — that is, whether the ordinance was unauthorized by the legislature so far as it attempted to establish cab stands in the public streets, and whether such proposed use of the streets in front of private property involves an impairment of the easements of the abutting owner.

The plaintiff corporation is the lessee of the well-known Waldorf-Astoria Hotel on Fifth avenue in the borough of Manhattan, between Thirty-third and Thirty-fourth streets. The length of the hotel on Thirty-fourth street is 350 feet and the principal entrances are on that street, there being no public entrances on Fifth avenue. Prior to the enactment of the public hack stand ordinance of June 2nd, 1913, the plaintiff, under the authority of permits issued by the bureau of licenses in the mayor's office, had maintained hack stands on Thirty-third street and Thirty-fourth street for the use of its guests under arrangement with a private corporation; the pre-existing ordinances under which such permits were granted were repealed when the new ordinance was enacted; and one of the principal grounds of complaint on the part of the plaintiff is that the public hack stand designated under the new ordinance " will occupy the identical space now occupied by the plaintiff in furnishing such service to and for the use of its patrons and guests, thereby working irreparable harm to the plaintiff in that it will not be able conveniently and properly to continue to furnish such service to its patrons and guests."

The proposition upon which the case for the plaintiff rests, so far as we are at liberty to consider it on this appeal, is that an abutting owner has an easement in the street in front of his premises of light, air and access which cannot be appropriated by the public without his consent except upon the payment of just compensation. It is contended that this right is infringed in the particular case before us by the enactment of an ordinance which permits the municipal authorities without the consent of the proprietors of the Waldorf-Astoria to establish a public hack stand on Thirty-fourth street in front of the hotel premises. This view was adopted by the two justices of the Appellate Division who dissented, while the majority agreed with the learned judge at Special Term that the right of ingress and egress assured

by the law to an abutting owner was sufficiently pre-
served by the requirement of the ordinance that a space
of thirty feet must be kept open and unoccupied by any
hack in front of the principal hotel entrance.   There is
no disagreement in the courts below as to the proposition
that the abutting owner's right of free and unimpeded
access to his property cannot lawfully be invaded; the
only difference between them is as to whether the pro-
visions of the ordinance in question necessarily constitute
a substantial interference with such right.

The general rule applicable to the situation presented
here is well stated by Judge Dillon in these words: "By
virtue of its power to regulate the use of streets and side-
walks, and to regulate hackmen and so forth, the city
council may provide for public hack stands in the city
streets, and may prescribe the length of time that hack-
men may stand thereat.   But it is not within the power
of the municipality to authorize the creation or mainte-
nance of a hack stand of such a nature as to interfere
with the ingress and egress from abutting property."
(2 Dillon on Municipal Corporations [5th ed.], § 1167.   See
*Pennsylvania Co.* v. *City of Chicago*, 181 Ill. 289;
*Donovan* v. *Pennsylvania Co.*, 199 U. S. 279.)

A brief history of the ordinance legislation in the city
of New York relating to hack stands is furnished by the
affidavit of an assistant corporation counsel, which shows
that public hack stands in front of private property have
been authorized and regulated by ordinance there from
the year 1817 up to the present time.   A custom which
has lasted a century is pretty strong evidence that the
occupation of the streets by hack stands, in a reasonable
number and within reasonable limits, has uniformly been
deemed an ordinary street use in New York.   We are
not referred to any case in an appellate court where the
validity of any of these New York city ordinances has
been questioned; they were recognized as valid by the
old Superior Court in *Masterson* v. *Short* (3 Abb. Pr.

[N. S.] 154.)   The opinion in that case was written by a scholarly judge who had carefully studied the development of the municipal government of New York (SAMUEL JONES); and his review can leave little doubt that the location and maintenance of public hack stands in the city is a street use of long standing derived from England, which would be subject to regulation by ordinance by virtue of the Montgomerie charter were there not express legislative authority for such regulation.   In *McCaffrey* v. *Smith* (41 Hun, 117), however, the General Term in the third department held that a by-law of the village of Saratoga Springs establishing a hack stand in front of the plaintiff's premises did not warrant its maintenance there without the plaintiff's consent; but it is to be noted that there the fee of the highway remained in the abutting owner, which is not the case here.

The learned counsel for the appellant insists that this distinction is not of any consequence.   He argues that the right of an owner or occupant of a city lot to the use of a street and to prevent its obstruction does not depend upon his ownership of the soil of the street but rests upon the fact that the property which he owns or occupied abuts upon a public highway.   The case of *Mahady* v. *Bushwick Railroad Co.* (91 N. Y. 148) is cited as authority for the proposition that the legislature, even where the municipality owns the fee of the street, cannot devote the street to purposes inconsistent with street uses without the permission of the abutting owners or compensation to them.   It is plain, however, from the more recent decision of this court in *Fobes* v. *Rome, W. & O. R. R. Co.* (121 N. Y. 505, 515) that it was not intended by anything said in the *Mahady* case to assert that the ownership of the fee in the street made no difference in the rights of abutting owners.   The extremely careful and discriminating opinion of Judge PECKHAM in the *Fobes* case made it clear that, while the construction of a horse railroad or steam surface railroad in a city

street was a new and additional burden on the land, the right to which did not exist by reason of the general right of passage through the street, yet where the adjoining owner of land is *not* the owner of the fee in the street and the railroad company had obtained the proper authority, such adjoining owner had no right to compensation for the added burden nor any ground of complaint on account of such use so long as it was not exclusive or excessive. On the other hand it was expressly declared that the adjoining owner *would* have a right of action on account of the imposition of the additional burden upon the land if he had title in fee to the center of the street. The distinction between the rights of a mere abutter and the rights of the owner of the fee of the street arising out of the occupation of the street by a surface railroad first found expression in the case of *Drake* v. *Hudson River Railroad Co.* (7 Barb. 508) and *Williams* v. *N. Y. Central Railroad Co.* (16 N. Y. 97). Judge PECKHAM showed in his opinion in the *Fobes* case that the decision in *Story* v. *N. Y. Elevated R. R. Co.* (90 N. Y. 122) was not intended to overrule or change the law as declared in these cases, but that it merely embodied the application of what were understood to be established principles of law to a new state of facts amounting to an absolute and permanent obstruction in a public street and involving the total and exclusive use of a portion thereof. This appropriation, being so complete and absolute, was held to be wholly beyond any legitimate use of a public street. If the public hack stands provided for by the ordinance, which is attacked in the present case, involved any such appropriation of the roadway as the occupation of a street by an elevated railroad structure, there would be a more tenable ground for the position of the dissenting judges in the Appellate Division who have applied the doctrine of the *Story* case to the establishment of these public hack stands. We are unable, however, to discover any resemblance sufficient to render the cases analogous.

It is important to appreciate the precise nature of the provision of the ordinance designed to preserve due access to the premises in front of which public hack stands may be established. *A space of at least thirty feet opposite the middle of the entrance must be kept free from standing hacks.* " No public hack shall stand at any hack stand located and designated by the mayor in accordance with section 3 of this article adjacent to the curb of the sidewalk within fifteen feet of the entrance to any building erected on the property adjacent to the said hack stand. The said fifteen feet shall be determined by measuring fifteen feet on each side of a point on the curb opposite the middle of the entrance to the adjacent building." (Ordinance, art. V, § 7.) This language prescribes the minimum width of the passageway from the street to the hotel which must be maintained in the event of the establishment of a hack stand opposite the premises. It does not assume to prescribe any maximum, and there is nothing to prevent the mayor in establishing a public hack stand from requiring more spacious access or access to more than one entrance where the conditions fairly demand it. We cannot say that this general provision for a space of thirty feet in front of hotels and the other buildings is so unreasonable as to render the ordinance void as matter of law. If in the establishment and maintenance of public hack stands under the ordinance cases arise in which the prescribed space is actually insufficient and a hack stand as established by the mayor unreasonably obstructs access to a hotel, the proprietors may seek redress in the courts against the particular method of enforcing the ordinance which leads to results infringing upon their rights. At present we are only called upon to determine whether the ordinance is valid on its face.

The establishment of a hack stand under this ordinance as we construe it must have reference to pre-existing conditions and the reasonable requirements of the abutting

owners.    In the case of a large hotel, for example, having several entrances in long-continued use it would obviously be unreasonable to restrict the proprietors by blocking the others with a hack stand.    So, also, the entrances to a hotel should be left ample enough not only to permit guests and others to get in and out but to permit a free approach to such entrances.    The standard of what experience has proved to be convenient in the past, in order to afford free and ample ingress and egress to and from a hotel or other public building, furnishes a ready test of what constitutes a reasonable exercise of power under the ordinance; and upon such reasonable application of its provisions the abutting owners are entitled to insist.    Otherwise, the ordinance must be deemed unlawful.

Objection is made to the inclusion of hotels among the places opposite which public hack stands may be established and it is asserted that this classification involves a distinction against hotels as compared with clubs which renders the ordinance void.    In determining the parties or premises upon which an ordinance shall be operative a municipality is not bound to adopt a strictly scientific classification or one which courts or social economists or other critics might deem the wisest or the best suited to the conditions to be met.    Of course the parties affected thereby must not be denied the equal protection of the law and this means that the liabilities imposed must operate with substantial uniformity upon all similarly situated. (See *Kentucky Railroad Tax Cases,* 115 U. S. 321.)    If this requirement is complied with it is sufficient, provided the classification be reasonable — that is to say, founded upon some rational distinction having a real basis in the state of things to be dealt with.    By the ordinance in question the mayor is authorized to locate public hack stands alongside the curb adjacent to public buildings, railroad stations, steamship and ferry landings, hotels, restaurants and theatres.    All these places possess a public character. They are frequented by large numbers of persons, many

of whom are likely to use a public cab service if it is conveniently available. These considerations, it seems to us, amply warrant their inclusion in a common class so far as the purpose of this ordinance is concerned. As to the special complaint in respect to the omission of clubs, that omission might well be justified by the different use to which a club building is ordinarily devoted. No one at all familiar with hotel life in New York would think for a moment of comparing the necessity for cab service at even the most important private club with that which exists at a great hotel like the Waldorf-Astoria.

The order appealed from should be affirmed, with costs, and the questions certified answered in the affirmative.

Werner, Hiscock, Chase, Collin, Hogan and Miller, JJ., concur.

Order affirmed.