GLENNA C. J. WILLERUP, Plaintiff, *v.* VILLAGE OF HEMPSTEAD and Others, Defendants.

Supreme Court, Nassau Special Term, March, 1923.

Injunctions — village zoning ordinance — municipal ordinance must be reasonable and not oppressive — equity — unfair action of village trustees in including property within "residence district"— zoning regulations declared void as to specific property without otherwise affecting their validity.

The court in the exercise of its powers to apply the principles of equity and fair dealing will not stand idly by and see injustice accomplished, even though it be done under the forms of law.

Unless a municipal ordinance complies with the requirement that it must be reasonable and not oppressive the courts will declare it void or inoperative; the unreasonableness of the ordinance need not appear on its face but the fact may be shown by evidence.

The statute (Laws of 1921, chapter 464, adding subdivision 30 to section 89 of the Village Law) authorizes the trustees among other things to "regulate and restrict the location of trades and industries and the location of buildings, designed for specific uses, and for such purpose" to "divide the village into districts, and prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered." It is further provided that the regulations "shall be made with reasonable consideration among other things to the most desirable use for which the land of each district may be adapted, the peculiar suitability for particular use of a district, the conservation of property values and the direction of building development, in accordance with a well considered plan." *Held*, that while the statute confers power to create zones and lays down certain general rules to be followed, the actual delimitation of the districts and the determination of the classes of business which may be carried on therein and the uses for which buildings therein may be erected or altered are in the hands of the trustees.

At the time that plaintiff purchased certain real property near the outer limits of the village of Hempstead with intention to use the same for public garage purposes and the vending of automobile supplies, there was in force no restriction, covenant, resolution or ordinance which would operate to prevent plaintiff from building a public garage upon the property in the immediate vicinity of which there are other garages and automobile supply stations. Contracts were made for the construction of a business building upon the property and in connection with plaintiff's proposed business. On May 2, 1922, work was begun under one of the contracts and upon the evening of that day the trustees

Supreme Court, March, 1923. [Vol. 120

of the village held a regular meeting at which all of them were present and unanimously adopted a resolution the object of which was to prevent the installation or maintenance within the limits of the village of any machine or device for the vending or sale of gasoline or other liquid explosives within five hundred feet of any other machine then installed for such purpose. This resolution was not published as an ordinance as required by the Village Law, nor was a certified copy thereof served upon the plaintiff. When on May 5, 1922, a contractor brought to plaintiff's premises tanks and other apparatus for installation of the gasoline service, a police officer of the village refused to allow such apparatus to be delivered and threatened plaintiff with arrest if delivery were made, whereupon plaintiff gave instructions not to unload the apparatus and it was taken away. In an action commenced against plaintiff herein on May 6, 1922, an order was granted restraining her from installing the gas tank and upon the hearing of the order to show cause why such restraining order should not be continued pending the trial of the action, an order was granted on June 26, 1922, continuing the injunction. The trial of that action on November 27, 1922, resulted in favor of the plaintiff herein upon the ground of the illegality of the resolution of May 2, 1922, whereupon on December 5, 1922, judgment was entered dismissing the complaint and vacating said injunction. On June 5, 1922, plaintiff filed with the clerk of the village plans and specifications for the erection of a building on her land, and in compliance with her request therefor, the clerk of the village on June 9, 1922, granted a permit for the erection of a building according to the plans so filed. Three days later a zoning ordinance purporting to regulate the location of trades and industries within the village was passed by the board of trustees by means of which plaintiff's premises were placed within the residence district and not in a district wherein business buildings might be erected. Said ordinance contained no provision whereby any person whose property was affected by the terms of the ordinance might appeal to any official or board of appeals for relief from any grievance deemed to exist by virtue of the passage of the ordinance. In an action to restrain the enforcement of said ordinance as against the premises of plaintiff, *held,* that the line of demarkation between the " residence district " and the " business district " had been deliberately drawn with undue severity by the village authorities so as to prevent plaintiff from making reasonable use of her said premises.

It was clear that plaintiff had suffered an individual hardship through official action resulting in financial loss to her without any material benefit to the public and other property owners of the village and she will be granted judgment in accordance with the prayer of her complaint.

The zoning regulations were enacted pursuant to general, not specific, legislative authority defining the details and modes of enforcement and the board of trustees of the village disregarded the statutory rules in including plaintiff's premises in a residence district.

It not being necessary in order to give plaintiff relief that the ordinance should be unreasonable and oppressive as to all persons or places affected by it, the zoning regulations are declared void as applied to plaintiff's premises, without otherwise affecting their validity.

SUIT for an injunction.

*Clarke & Frost* (*Edward L. Frost,* of counsel), for plaintiff.

*Felix Reifschneider, Jr.,* for defendants.

BENEDICT, J.   The plaintiff asks equitable relief restraining the defendants from enforcing a zoning ordinance which by its terms prevents her from using certain real property which she owns in the village of Hempstead for the business purposes for which she purchased it.

The action came on for trial at the Nassau Special Term in February.   Evidence was offered on behalf of the plaintiff, but none on behalf of the defendants.

The complaint alleges in substance and the evidence showed the following facts:   Mrs. Willerup, the plaintiff, entered into a contract on the 15th day of March, 1922, with the executors of the will of Henry E. Cornwell, deceased, for the purchase of the premises described in the complaint, intending to use the property for public garage purposes and the vending of automobile supplies.   At that time there was in force no restriction, covenant, resolution or ordinance which would operate to prevent her from building and maintaining a public garage upon the property. Immediately thereafter she employed one of the title guarantee companies to examine the title; and, the company having reported that the premises were free of incumbrances and unrestricted as to use, she completed her purchase, receiving a deed conveying the title to her on April 14, 1922, which deed was thereupon recorded in the office of the clerk of Nassau county.   She paid for the property the sum of $8,500.   Thereupon she began preparations for the construction of a business building on the premises and made certain contracts connected with such a building and with the business which she proposed to carry on on the property.   These contracts were made between April 21 and 29, 1922, and were as follows:

A contract for general automobile supplies to the amount of $2,896, which she agreed to purchase and accept by May 15, 1922, and she paid on account therefor in cash $434.48.   On the same date she made a contract with the Hempstead Contracting Company for the removal of trees and stumps, grading the driveway, excavating of pits for four gasoline tanks, laying of foundation and covering the surface of the driveway, for the price of $2,776 and paid on account thereof the sum of $400.   On April 22, 1922, she made a contract with the Gulf Refining Company for motor lubricating oil and grease, wherein she agreed to purchase between the 22d day of April, 1922, and the 21st day of April, 1923, not less than 3,500 gallons of oil at prices therein stated.   On April 27, 1922, she made a contract with C. E. Kairn, an architect, to draw plans and specifications and to supervise the construction of buildings to be erected on the premises so purchased, the esti-

mated cost of such buildings to be $40,000, and she agreed to pay him for his services a sum equal to six per cent of such estimated cost, and she did pay on the same date on account thereof the sum of $1,800. On April 29, 1922, she made a contract with one Thomas Pissaro for the erection of said buildings and paid to him the sum of $1,000 on said date on account of such contract. All of such payments were actually made by the plaintiff for the purpose of establishing and conducting the garage business on the premises. On May 2, 1922, the Hempstead Contracting Company began work under its contract, tore down a portion of the fence owned by the plaintiff, cut down trees and began excavating for the driveway. On the evening of May 2, 1922, the defendant trustees held a regular meeting at which all of them were present and unanimously adopted a resolution the object of which was to prevent the installation or maintenance within the limits of the village of Hempstead of any machine or device for the vending or sale of gasoline or other liquid explosives within 500 feet of any other machine then installed for such purpose. This resolution was not published as an ordinance as required by the Village Law, nor was a certified copy of it served on the plaintiff. On May 5, 1922, the Gulf Refining Company brought to plaintiff's premises tanks and other apparatus for installation of the gasoline service; thereupon a police officer of the village refused to allow such apparatus to be delivered and threatened plaintiff with arrest if delivery were made, whereupon plaintiff gave instructions to the Gulf Refining Company not to unload the apparatus and the company took the said apparatus away. Thereafter on May 6, 1922, an action was begun by Edith M. Armstrong as plaintiff against the plaintiff in this action, and an order was granted restraining this plaintiff from installing the gas tank above mentioned and directing her to show cause before the Supreme Court on May 15, 1922, why said restraining order should not be continued pending the trial of said action, and the said order to show cause, with a copy of the papers upon which it was granted, was served on plaintiff on the 8th day of May, 1922, whereupon she stopped further work on the premises. The motion upon said order to show cause came on to be heard at Trial Term of this court at Mineola on May 18, 1922, and was argued before and submitted to the justice there presiding, who on or about the 26th day of June, 1922, granted an order continuing the injunction contained in the order to show cause during the pendency of the action. On the 5th day of June, 1922, the plaintiff filed with the clerk of the village of Hempstead plans and specifications for the erection of a building on her land and requested that a permit for such

erection be granted to her, and upon the 9th day of June, 1922, the village clerk of the village of Hempstead granted to the plaintiff a permit No. 481 for the erection of a building according to the plans so filed with him on June 5, 1922. On the 12th day of June, 1922, after the permit referred to had been granted to the plaintiff, the individual defendants, being assembled in their capacity as the board of trustees of the village of Hempstead, adopted and passed an ordinance of the kind and nature usually known as a zoning ordinance, which purported to regulate the location of trades and industries within the village of Hempstead, and by means of which the real property hereinbefore referred to was placed within the residence district, so called, and not in a district wherein business buildings might be erected; and thereby, if said ordinance were valid and applicable to the plaintiff's property, such property would have been rendered incapable of use for the purpose for which the plaintiff had purchased the same.

The action against this plaintiff brought by Edith M. Armstrong came on for trial on the 27th day of November, 1922, and resulted in a decision in favor of the plaintiff in this action on the ground of the illegality of the said resolution of May 2, 1922. Thereupon on the 5th day of December, 1922, judgment was entered dismissing the complaint in the Armstrong action and vacating the injunction above mentioned as having been granted and continued during the pendency of that action.

Because of the facts which I have referred to and the pendency of such injunction, the plaintiff was prevented from proceeding with the erection of the building on her property and from engaging in business as she had contemplated; and, moreover, the zoning ordinance having been passed while the plaintiff was still prevented from proceeding with the erection of the building on her property, she could not so proceed in violation of the express terms of said Building Zone Resolution if the same were to be held applicable to her property, because the said building, which she had obtained the consent of the building department of the village of Hempstead to erect, would violate the Building Zone Resolution, preventing the plaintiff from making use of her said property for the business purpose for which she had purchased it. Thereupon the plaintiff requested the trustees, in writing, to enter upon their records an appropriate resolution that the plaintiff's premises were not subject to the provisions of the Building Zone Resolution, which request the board declined to grant.

It will be observed upon inspection of the zoning ordinance referred to that it contains no provision whereby any person whose property is affected by the terms of the ordinance may appeal

to any official or board of appeals for relief from any grievance which is deemed to exist by virtue of the passage of the ordinance. In this connection it is not without interest to consider the statement of principles of zoning formulated by Edward M. Bassett, counsel to the zoning committee of New York, in his pamphlet revised in 1922, wherein he states at page 334 that

" There should be an administrative board with power under State law:

" A.   *   *   *

" B.   *   *   *

" C. To vary the literal requirement of the law in individual cases of buildings where unnecessary and excessive hardship is caused and the intention of the law is equally accomplished by an alternative method to be prescribed. Not only should the powers of such a Board be specified in the ordinance, but the State Legislature should authorize a municipal authority to create such a Board and to provide in the ordinance what borderline and exceptional cases it may decide.   *   *   *   Decisions of the Board should be subject to Court review."

He further says at pages 330 and 331:

" Another provision that should be supplied by the state legislature is to empower the city to create a board of appeals. The city without such a grant cannot endow a board of appeals with power to decide certain borderline cases of buildings which will be enumerated in the ordinance itself, or to make variations in the provisions of the law to carry out the spirit of the law and prevent unnecessary hardship. It is a safeguard in the administration of the law to have a board of appeals. The letter of the ordinance and maps may be the extreme of hardship. No words can be used in the ordinance that will provide for the multitudinous contingencies of new buildings. If there is no board of appeals to apply the spirit of the law and vary its letter, the exercise of the police power may in certain cases be arbitrary and incur the criticism of the courts. Moreover it is a great safeguard to preserve that elasticity which a board of appeals can give to a zoning plan in order to minimize the danger of a pronouncement of unconstitutionality by the courts. It is a well-recognized rule of the law that before an aggrieved owner can obtain a writ of mandamus from the court against a building superintendent to compel him to file plans and issue a permit, he must exhaust all of the remedies afforded him by the city. This means that before he can bring up the question of unconstitutionality he must bring his plans before the board of appeals. Experience has shown that a wise board of appeals can practically always mitigate the unfairness involved in the letter

of the law if the applicant has a sound and deserving case. If, however, the board of appeals will not adjust his case to suit him, he goes before the courts with all of the chances against him, for the courts will say that his plans run counter to an impartial plan covering the entire city and that in addition a fair board of appeals having the power of adjustment in cases of unnecessary hardship decided against the applicant."

In view of the fact that the ordinance of the village of Hempstead does not provide for any board having the powers just enumerated, it seems to me that the court is required to consider the facts involved in the case with greater care to see that no injustice has been attempted, than if the property owner were in a position where she might appeal to a local board having power to vary the literal requirement of the law in individual cases of buildings, where unnecessary and excessive hardship is caused. I do not mean to be understood by this as holding that the right of review by the court is conferred in all cases where no other appellate tribunal is provided for, but only that the court, when the issue is presented, ought to look with great care into the surrounding facts and see that justice is done both to the property owner immediately affected and to the other property owners within the provisions of the Building Zone Resolution.

I think it is clear in this case that the plaintiff has suffered an individual hardship through official action which has resulted in financial loss to her and without any material benefit to the public and other property owners of the village of Hempstead. It seems to me that the line of demarkation between the " residence district " and the " business district " has been drawn with undue severity by the village authorities, so as to prevent the plaintiff from making reasonable use of her property.

The exercise of the police power in the creation of zoning districts wherein the character of the buildings or their use is provided for by ordinance is of comparatively recent origin. Its benign purpose in the protection of real property has been recognized by the courts in many states, and the statutes of this state permitting their application to the municipalities within the state have received the support of our courts as being a constitutional exercise of the police power. In the present case, however, it appears as though there has been a deliberate effort to prevent the plaintiff from making reasonable use of the property which she had purchased and which she had started to use in a legitimate business. This property is situated near the outer limits of the village of Hempstead. There are other garages and automobile supply stations in its immediate vicinity. It was not a case where

a person in disregard of the wishes of persons living in a purely residential section has attempted to invade such section with a commercial enterprise. It may very well be that the opposition to the plaintiff's proposed improvement and business originated in the fear of the supposed effect that such business might have upon the business of competitors in the same line; but be that as it may, it is manifest that the erection of a handsome building estimated to cost $40,000 would not materially injure the property in the immediate vicinity of the proposed structure. The photographs introduced in evidence make this perfectly clear and the suggestion contained in the original resolution of May 2, 1922 (which has been declared invalid by this court), that the plaintiff's building and business would endanger public safety and interfere with the " proper regulation of traffic " seems to the court under the conditions existing at that time to have been fanciful or at any rate to have had but little merit.

The learned counsel for the plaintiff lays great stress upon the fact that before the passage of the first resolution, and before the first injunction had been granted to enforce it, and before the passage of the Building Zone Resolution, the plaintiff had in fact begun the erection of a building for the purpose of conducting her business and had made the contracts to which I have heretofore referred, and for these reasons he argues that she was not within the provisions of the Building Zone Resolution because she was engaged in business before the passage of the ordinance. He does not contend that the Building Zone Resolution itself was not legally adopted under the provisions of the Village Law, but only that good faith required that the plaintiff's property should not have been included within the limits of the residence district. With this contention I am inclined to agree, because it seems to me that under the circumstances developed by the evidence, the plaintiff has sustained a wrong which is unnecessary, and that the enforcement of the ordinance against her will cause injustice without any resultant benefit to the defendant, the village of Hempstead, and its inhabitants. I think that the court in the exercise of the power to apply the principles of equity and fair dealing ought not to stand idly by and see injustice accomplished, even though it be done under the forms of law. The position which the trustees of the village have taken in this matter does not commend itself to the court. They were advised in writing on June 5, 1922, by plaintiff's application for a permit, of the plaintiff's action and purpose, and they subsequently permitted the clerk of the village to grant her a permit for the erection of the building, and then a few days later they passed the Building Zone Resolution

which rendered the building permit of no avail. The trustees of villages are public officers, selected under the law for the purpose of duly administering the trust committed to their charge, which includes all matters connected with the governing of the public affairs of the village, including such legislative and administrative powers as may be necessary for the care of its funds, when raised by taxation for village purposes, and in general the oversight and safe-guarding of the public affairs and welfare of its citizens and the property within its limits. They should administer their office with fairness and justness to all concerned and not, in a case like the one at bar, use their statutory powers to circumvent the reasonable use of the property of one citizen for the benefit of others.

It is well settled that an ordinance enacted by a municipality in pursuance of implied powers or of general legislative authority must be reasonable and not opporessive, and that unless ordinances comply with such requirement the courts will declare them void or inoperative. 2 Dillon Mun. Corp. § 589 *et seq.;* 28 Cyc. 368 *et seq.; Village of Carthage* v. *Frederick,* 122 N. Y. 268, 271; *Fougera & Co.* v. *City of New York,* 224 id. 269, 281; *Haynes* v. *Cape May,* 50 N. J. Law, 55, 57; *Park Hill Devel. Co.* v. *Evansville,* 130 N. E. Rep. (Ind.) 645; *Koy* v. *City of Chicago,* 263 Ill. 122, 127; *Murphy* v. *C., R. I. & P. Ry. Co.,* 247 id. 614, 618. The unreasonableness need not appear on the face of the ordinance, but may be shown by evidence. *Fougera & Co.* v. *City of New York, supra; People ex rel. Knoblauch* v. *Warden,* 216 N. Y. 154, 162. On the other hand, where the ordinance is enacted pursuant to " specific legislative authority defining its details and mode of enforcement " (216 N. Y. 162), or where it has been ratified by the legislature " it is treated as a statute, and evidence is not admissible to show its unreasonableness or invalidity. *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459; *People ex rel. Doyle* v. *Atwell,* 232 id. 96.

In my opinion, the zoning regulations involved in the present case were enacted pursuant to general authority and not pursuant to specific legislative authority defining the details and mode of enforcement. The power to enact such regulations was conferred on village trustees by Laws of 1921, chapter 464, adding sub-division 30 to section 89 of the Village Law. This subdivision authorizes the trustees among other things to " regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses, and for such purpose " to " divide the village into districts, and prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered." It is further provided that the regulations

" shall be made with reasonable consideration among other things to the most desirable use for which the land of each district may be adapted, the peculiar suitability for particular use of a district, the conservation of property values and the direction of building development, in accordance with a well considered plan." Although, upon a mere superficial reading, the statute might seem to confer specific authority to enact the regulations in question, yet when it is considered with the subject-matter to which it relates, it will be seen that a multitude of details is left to the discretion of the village trustees, and that the opportunities for arbitrary and oppressive regulations are correspondingly large. The statute confers the power to create zones and lays down certain general rules to be followed, but the actual delimitation of the districts and the determination of the classes of business which may be carried on therein and the uses for which buildings therein may be erected or altered are in the hands of the trustees. That the statute does not define the details of the exercise of the power is made plain when we see that, although the statute occupies less than a page of the Session Laws, the zoning regulations, printed in much smaller type, cover a broadside which, omitting margins, measures six and seven-eighths inches by sixteen and three-eighths inches. As I understand it the rule forbidding the introduction of evidence to show the unreasonableness or invalidity of an ordinance adopted in pursuance of specific authority rests upon the theory that the legislature has itself prescribed so precisely the character of ordinance which the municipal authorities may enact that there is little opportunity for arbitrary or oppressive action on the part of the municipal body. Such a case is *People ex rel. Doyle* v. *Atwell, supra,* where the statute and ordinance related to the very simple matter of prohibiting assemblages of persons in the public streets, and the ordinance closely followed the terms of the statute. In the present case also the general rules which the statute lays down to guide the trustees in laying out the districts, etc., suggest strongly that it is competent for the courts to consider the regulations in connection with the location and surroundings of any property to which they are applicable to ascertain whether or not the trustees have followed these rules; for, if they have not, it is clear that they have exceeded their powers. And the question whether they have so followed these rules cannot be determined from the regulations themselves, but only from the regulations considered in connection with the property affected.

The unreasonable and oppressive character of the zoning regulations as applied to plaintiff's premises is made manifest by the

facts which I have already recited. It is also my opinion that the village trustees disregarded the statutory rules in including plaintiff's premises in a residence district; for, as already stated, they are situated on a main street of Hempstead, in close proximity to buildings now and heretofore used as garages. It is not necessary, in order to give the plaintiff relief, that the ordinance should be unreasonable and oppressive as to all persons or all places affected by it. *Fougera & Co.* v. *City of New York, supra; Waldorf-Astoria Hotel Co.* v. *City of N. Y.,* 212 N. Y. 97; *Chicago* v. *Gunning System,* 214 Ill. 628, 640, 641; *Penn. R. R. Co.* v. *Jersey City,* 47 N. J. Law, 286; *North Jersey Street Ry. Co.* v. *Jersey City,* 75 id. 349, 354; *Mader* v. *Topeka,* 106 Kan. 867. The case of *Fougera & Co.* v. *City of New York, supra,* is particularly in point. There the Court of Appeals had before it a regulation of the board of health of the city of New York providing in substance that there should be no sale of patent or proprietary medicines in said city unless the names of the therapeutic and certain other ingredients should be registered in the department of health. It appeared that the plaintiff, which was engaged in the importation and sale of proprietary and patent medicines, had a large stock of drugs, acquired prior to the enactment of said regulation, the ingredients of which it did not know and could not ascertain. Thus as to plaintiff the regulation was in effect an absolute prohibition against the sale of such merchandise. It was held that the regulation was void for failure to incorporate a provision creating an exception in such a case as that of the plaintiff. Similarly, in the case at bar, plaintiff, acting in good faith and not in violation of any existing law, ordinance or contract obligation, had bought land, made binding contracts, and expended considerable sums of money in anticipation of using the premises so purchased for a garage business; and on the principle of the *Fougera* case the ordinance here in question should be held invalid for failure to contain a provision for an exception in such cases as hers, or at least a provision for a board of appeals or other authority empowered to make exceptions in cases of hardship. The case of *People ex rel. Oak Hill Cemetery Association* v. *Pratt,* 129 N. Y. 68, is not controlling here. In the first place the question before the court in that case was only as to the taxability of relator's lands, the use of which for cemetery purposes had been forbidden by city ordinance; and it was held that despite the ordinance the lands were not taxable under the statute. Had the ordinance been considered void, so that the lands could have been actually used for cemetery purposes, it is obvious that the same result must have been reached. The determination of the validity of the ordinance was, therefore,

unnecessary to the decision. In the second place, all that the relator did, apparently, prior to the passage of the ordinance, was to organize as a cemetery corporation and purchase lands for its use. If in the present case the plaintiff had done no more than to purchase land for a garage, I should not hold that she was in a position to question the validity of the ordinance, for she could sell the land again. But the plaintiff has incurred obligations and expended moneys which, if she be debarred from carrying on the projected business, will result in losses which she cannot in any way recoup; and on this ground at least the present case is distinguishable from the *Oak Hill Cemetery* case. Finally the ordinance involved in that case was a health regulation, which is not the case here. The case at bar is also clearly distinguishable from the recent case of *Matter of Cherry* v. *Isbister*, 201 App. Div. 856; affd., 234 N. Y. 111. There the only question was whether a zoning ordinance, adopted after the relator had filed his plans and obtained a permit for the erection of his building, was operative to prevent the erection of such building; and it was held that it was. No such oppressive features were shown as appear in the present case. In *Cohen* v. *Rosevale Realty Co.*, Faber, J., N. Y. L. J., March 12, 1923, it appeared that the defendant had begun to erect its buildings before the adoption of the zoning ordinance, but that this had been done in direct violation of a restrictive covenant affecting defendant's premises. No such circumstances appear in the present case. The plaintiff comes into court with clean hands.

The only question remaining is whether the ordinance must be declared wholly void, or whether it can be declared valid in general but inoperative so far as it affects plaintiff with respect to the premises in question. For myself, I can see no insuperable objection to the latter view, and there are authorities in other states which tend to sustain it. *North Jersey St. Ry. Co.* v. *Jersey City, supra; Mader* v. *Topeka, supra.* Our Court of Appeals in the *Fougera & Co.* v. *City of New York* case, *supra*, held that the regulation there under consideration could not be declared void as applicable to parties in the situation of the plaintiff in that case, and valid as applied to those in different situations. In the present case, however, where the regulations are applicable territorially, so to speak, I can see no reason why they cannot be declared void as applied to plaintiff's property, without affecting their validity otherwise.

Judgment for the plaintiff in accordance with the prayer of her complaint, without costs, enjoining the defendants from enforcing the zoning regulations as against her premises. Let

plaintiff submit a proposed decision and judgment accordingly, on two days' notice of settlement. Requests to find may be submitted at the same time.

Judgment accordingly.