# G. I. VETERANS' TAXICAB ASSOCIATION, INC. *v.* YELLOW CAB CO. ET AL.

[No. 114, October Term, 1948.]

552

Decided March 11, 1949.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*H. Clifton Owens* for the appellant.

*Randolph Barton, Jr.* and *Isidor Roman*, with whom was *Nicholas G. Penniman, III*, on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The Yellow Cab Company, holding permits to stand its taxicabs at certain locations in Baltimore City, joined with certain hotels, other property owners, and individual taxicab drivers in filing a bill of complaint in the Circuit Court of Baltimore City, praying an injunction to restrain the Police Commissioner of Baltimore City from enforcing ordinance 201, of the Mayor and City Council, approved January 26, 1948, on the ground that it is unconstitutional and invalid. The Police Commissioner answered, submitting to whatever action the court might deem proper. The Mayor and City Council demurred to the bill. The present appellant, intervening by leave of court, likewise demurred and has appealed from an order overruling the demurrer. Its right to appeal is not questioned.

Ordinance 201* reads as follows:

"An ordinance prohibiting the Police Commissioner of Baltimore City from granting an exclusive franchise to any person, firm or corporation to stand vehicles for hire

---

* Became approved Ordinance 126 (1947-1948).

in front of any hotel or other place and providing that any taxicab may stand in any place designated as a taxicab stand.

"WHEREAS, the Police Commissioner of Baltimore City has designated certain places in front of hotels and other places as taxicab stands, with the exclusive right to the person receiving permission therefor; and

"WHEREAS, this procedure is contrary to the principles of democracy and encourages monopoly; and

"WHEREAS, numerous veterans have secured permits from the Public Service Commission for the operation of taxicabs but cannot enter the so-called taxicab stands in front of hotels and other places, thereby being deprived of the opportunity to secure or solicit patronage from hotels and other places; therefore

"SECTION 1. *Be it ordained by the Mayor and City Council of Baltimore,* That any spaces heretofore or hereafter designated by the Police Commissioner of Baltimore City as taxicab stands in front of hotels and other places shall not be for the exclusive use of the person, firm or corporation given such permit but shall be open to any person operating a taxicab, who shall have equal rights to enter such spaces and secure or solicit patrons. Any person interfering with any taxicab operator in entering or standing in such places shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to a penalty of not more than One Hundred Dollars ($100.00) for each such violation."

By section 286, ch. 109 of the Acts of 1910, the Board of Police Commissioners of Baltimore City was "authorized and empowered to set aside and designate certain places in the City of Baltimore to be occupied and used as public or private stands for hackney carriages, and to stipulate the number of such carriage which may occupy or use each of such stands, and to make regulations for the occupation and use of such stands." Section 281 defined "hackney carriage" to include "every vehicle * * * propelled by mechanical motor, except a street car, used or to be used for the conveyance of persons for hire from

place to place within the city." The Board was also authorized to fix rates of fare. The validity of these sections was sustained in *Swann v. Baltimore City*, 132 Md. 256, 261, 103 A. 441, 442, where it was said: "There can be no question that the designation of hack stands and the regulation of the use and occupation of the streets of the city therefor is a proper exercise of the police power, and the Legislature is the sole judge of the reasonableness of the method adopted."

These sections were, of course, enacted as a public local law, prior to the adoption of the Home Rule Amendment in 1915, Art. XIA, Maryland Constitution. Baltimore City adopted a charter in 1918 which purported to continue in full force and effect existing local laws, including the sections quoted. (Charter, 1927 ed., Art. II, section II, p. 229.) Among the powers granted to the City was the power to regulate the use of the streets. Under sections 3 and 4 of Art. XIA it was provided that after the adoption of a charter, the Mayor and City Council should have power to repeal or amend local laws, subject to the Constitution and Public General Laws of the State, and that no local law should be enacted by the General Assembly, on any subject covered by the express powers granted. Notwithstanding these provisions, various changes were made by the General Assembly in the sections enacted in 1910, which were neither repealed nor amended by the Mayor and City Council, prior to 1947.

The powers granted to the Board of Police Commissioners were transferred to the Police Commissioner by ch. 559, Acts of 1920. By ch. 677, Acts of 1920, the Public Service Commission law was amended to include taxicabs, and by ch. 485, Acts of 1931, new sections were added to section 361 et seq., Art. 23 of the Code, conferring regulatory power over taxicabs, including rates, on the Public Service Commission. Section 361F (Section 367, Code of 1939) provided, however, that the provisions relating to taxicabs should not be construed "to limit the power and authority of incorporated cities and towns to adopt reasonable traffic regulations, including the designa-

tion of taxicab stands". By ch. 708, Acts of 1939, sections 281 et seq. (ch. 109, Acts of 1910) were amended to harmonize with the change placing taxicabs under the supervision of the Public Service Commission. Section 286 was re-enacted without change, except to substitute the word "taxicabs" for the words "hackney carriages", and the word "vehicles" for "carriages". This, of course, was not a change in substance. The section appeared in this altered form in the Charter and Public Local Laws of Baltimore City (1938 ed.), as section 379. In the new charter*, approved June 5, 1946 and ratified and approved by the voters at the November election, 1946, no local laws were included, but by section 6 (23)** the Mayor and City Council were empowered to "exercise within the limits of Baltimore City all the power commonly known as the police power to the same extent as the State has or could exercise said power within said limits; provided, however, that no ordinance of the City * * * shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner."

The first question presented is whether the power to regulate taxicab stands in Baltimore City now resides in the General Assembly or in the Mayor and City Council. We think it clearly resides in the latter. After the adoption of the charter in 1918, Section 286 of ch. 109, Acts of 1910, continued to delegate the exercise of that portion of the police power to the Board of Police Commissioners, appointed by the governor, and to its successor, the Police Commissioner. In the legislation relating to the Public Service Commission in 1920, the legislature clearly recognized the power of the Mayor and City Council to designate taxicab stands, and the amendments to section 286, by the Act of 1939, made no changes in substance and may be disregarded for the purposes of this case. The Mayor and City Council undoubtedly had the power, in 1947, to repeal or amend

---

*See Charter and Public Local Laws of Baltimore City (1949 ed.).
**Sec. 6(24) of 1949 ed. of Charter.

section 286 (now section 379) of the Charter and Public Local Laws.

The chancellor took the view that the Mayor and City Council, in enacting Ordinance 201, did not purport to repeal or amend section 286 (379). Certainly it did not undertake to abrogate the power of the Police Commissioner to designate taxicabs stands, or to confer that power on a new agency. It did, however, limit the exercise of his power, and we think that was, in effect, an amendment, in substance if not in form, of the public local law. The proviso in Section 6 (23)* of the present charter, that "no ordinance * * * shall * * * interfere with the powers of the Police Commissioner", would seem to have reference to his executive powers. Compare *Taxicab Co. v. City of Baltimore*, 118 Md. 359, 369, 84 A. 548. In any event, we think it does not restrict the power of the City to legislate, under the Home Rule Amendment, on subject matter within the scope of the police power, even though such legislation may add to or subtract from his duties as to local law enforcement.

In *State v. Stewart*, 1927, 137 A. 39, 42, 152 Md. 419, 425, the appellee was indicted for violation of parking regulations made by the Police Commissioner of Baltimore City under the authority of ch. 436, Acts of 1924. In holding that the Act was invalid under the Home Rule Amendment, it was said: "The subject-matter is exclusively local to Baltimore City, and the mere form which the enactment has taken, that of an amendment to a public general law, is not controlling. * * * Neither does the delegation of the authority and power to make these regulations, to an officer appointed by the Governor, change its status as a public local law. The enforcement of the laws local to Baltimore city is committed to the police commissioner, in the execution of the police power enjoyed by the city, and the mere fact that the designation of its chief police officer is made by the Governor of the state, rather than by the city authorities, does not change the character of the law providing for the regu-

---

* Sec. 6 (24) of 1949 ed. of Charter.

lation of the traffic upon the streets and highways of the city, so as to make it a general rather than a local law." The converse of this proposition, of course, is that an ordinance upon the subject of traffic regulations is a valid exercise of the police power now lodged in the Mayor and City Council. The designation of taxicab stands falls in that category. *Swann v. Baltimore City, supra; 3 McQuillin, Municipal Corporations* (Rev. ed.), § 981, p. 222.

The appellees contend, however, that Ordinance 201 is invalid because it attempts to revoke or modify outstanding permits duly issued by the Police Commissioner, and interfere with or destroy existing property and contract rights. The permits filed as exhibits purport to authorize "private hackney carriage" stands, under ch. 109, Acts of 1910. They each contain the statement "good until revoked. Subject to all regulations as are now in effect or may be hereafter adopted." The effect of the Ordinance is to invalidate such permits, insofar as they purport to confer exclusive rights upon the permittees. But the permits did not create vested rights, on the contrary they were expressly subject to future regulation. The appellees have no property rights in the streets superior to regulations adopted under the police power. The fact that there may be outstanding contracts between the taxicab company and property owners, with reference to the erection and maintenance of telephone call boxes and the erection of booths for dispatchers, predicated upon the exclusive use of the stands for its own drivers, cannot prevent the city authorities from withdrawing the privilege by appropriate legislation. The wisdom of the new policy, and its effect upon public convenience, are questions for the legislative branch, and not for the courts to consider. The burden of proving that such legislation is arbitrary or unreasonable is upon the complainants. We think the allegations of the bill do not meet that burden. Granting that the business of the Yellow Cab Co., built upon exclusive access to the telephone call boxes and dispatchers provided by it at

the locations in question, may be seriously affected, it does not follow that the company acquired any property or constitutional rights to such access. See *The Taxicab Cases*, 82 Misc. 94, 143 N. Y. S. 279, affirmed 159 App. Div. 893, 144 N. Y. S. 299; *Waldorf-Astoria Hotel Co. v. New York*, 212 N. Y. 97, 105 N. E. 803. The company cannot, of course, be compelled to share its private facilities with other companies, but it must adjust its operations to meet the changed conditions. We do not intimate that abutting property owners may not have a standing to object to the location of public taxicab stands adjacent to their property, on the ground of nuisance. That question is not before us. Compare *Waldorf-Astoria Hotel Co. v. New York, supra.*

The appellees contend that the ordinance is invalid because it withdraws the exclusive privilege heretofore granted without opportunity for a hearing. They rely upon the *Minor Privilege* cases, 1917, 131 Md. 600, 102 A. 1014, where the city undertook to revoke all privileges granted for the erection of permanent encroachments, such as bow windows, signs, marquees, show windows, and similar projections beyond the building line. The property owners were notified by advertisement to remove such encroachments or obtain new permits upon the payment of such charges as the Board of Estimates might fix. It was held that the attempted revocation was not in the exercise of the police power, but an unauthorized revenue measure. Injunctions were issued "without prejudice to the Board (in such cases as we have said above it has the right to take such action) to notify the parties to appear before it and show cause why the privilege or privileges should not be revoked or additional charges made for it or them, and without prejudice to the city officials taking action in the exercise of the police power."

Commenting on that case in the recent case of *Mayor & City Council of Baltimore v. Canton Co.*, 186 Md. 618, 632, 47 A. 2d 775, 781, we said "it was held that the Board of Estimates has no power to impose charges

for minor privileges granted before 1900; and that permits issued, before or since 1900, without reserved power of revocation, are revocable only in the exercise of the police power, and cannot be revoked in professed exercise of the police power for the real purpose of re-granting them for increased compensation."

In the case at bar there is no attempt to impose a license tax or fee to obtain revenue. The power invoked is the police power, and the outstanding permits are in the nature of special parking privileges. In *Perellis v. Baltimore*, 190 Md. 86, 57 A. 2d 341, it was pointed out that adjacent property owners have no easement in the public highway, although they have a standing to object to appropriation of the street for private purposes. In the case at bar the effect of the Ordinance is to restore the public use of the street, in the exercise of a reserved power. The complainants are not entitled to a hearing before the Police Commissioner, who no longer has discretion to grant a non-exclusive permit. In attacking the validity of the Ordinance, it is not contended that any legal requirements in the enactment of the Ordinance were omitted. The appellees were not entitled to any other notice or hearing than that afforded in the case of any other public local law enacted by the legislative branch of the city government.

The appellees contend that the title is misleading, in that it does not specifically refer to permits heretofore issued, and hence is narrower than the text. *Brooklyn Apartments v. Baltimore*, 189 Md. 201, 55 A. 2d 500, 502. However, the title describes the Ordinance as "prohibiting the Police Commissioner * * * from granting an exclusive franchise * * * and providing that any taxicab may stand in any place designated as a taxicab stand". The last clause, unless it were regarded as mere surplusage, naturally applies to places designated prior to the enactment. This is made abundantly clear by the recitals in the whereas clauses. We find no merit in the contention.

We think the demurrer to the bill of complaint should have been sustained, without leave to amend, and the bill dismissed.

*Order reversed, with costs.*