## BROOKLYN APARTMENTS, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 89, October Term, 1947.]

*Decided November 3, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*August Levene* for the appellant.

*Lester H. Crowther, Deputy City Solicitor of Baltimore,* and *Michael J. Hankin, Assistant City Solicitor,* with whom was *Simon E. Sobeloff, City Solicitor,* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This case was advanced at the request of the Mayor and City Council of Baltimore, and had an early hearing, because of the public nature of the questions involved. These questions involve the validity and the construction of Ordinance No. 745 of the Mayor and City Council of Baltimore, enacted under the authority of Chapter 1, Acts of Assembly Extraordinary Session, 1945. No point is made of the validity or the construction of the enabling act, nor of the power of the City to pass an ordinance of the general nature and character of the one before us. It is contended, however, that the title of the Ordinance is misleading, and that the body of the Ordinance imposes a tax which is discriminatory and unconstitutional.

The appellant raised these questions by a bill of complaint asking for a declaratory decree and for an injunction against the imposition of the tax upon it. The City and the City Collector demurred. The Chancellor sustained the demurrer, and dismissed the bill.

It is alleged in the bill and must be taken as true for the purposes of the demurrer, that the appellant owns and operates in the City of Baltimore, 11 apartment buildings containing 308 apartments; that the tenants of all these apartments use them only for residential purposes, and that the gas and electricity consumed by the tenants are paid for by the appellant, which makes no specific charge to the tenants for such gas and electricity. This gas and electricity is delivered by the Consolidated Gas, Electric Light and Power Company to the appellant under Schedule G as to electricity and Schedule C as to gas. These two schedules, which are on file with the Public Service Commission, are the general service schedules for use for all purposes. There are special residential schedules known as R for electricity and D for gas. The City claims that the sales of gas and electricity to the appellant are subject to the tax imposed by the Ordinance and demand has been made upon the appellant for payment. The pertinent parts of the Ordinance are as follows:

"An ordinance levying and imposing a tax on all sales for consumption for non-residential uses of artificial or natural gas and electricity delivered in Baltimore City, and on all sales of service for the transmission of messages by non-residential telephones within the limits of Baltimore City billed during the year 1947, with certain exceptions, and providing for the payment and collection of said taxes, imposing and conferring certain duties nad authority on the City Collector of Baltimore City, and providing penalties for the violation of the provisions of this ordinance.

"Section 1. Be it ordained by the Mayor and City Council of Baltimore, That during the year 1947, there is hereby levied and imposed on all sales for consumption, except as made under the residential schedules applicable to the City of Baltimore on file with the Public Service Commission of Maryland (designated schedules R. City, D. City and DH) of artificial or natural gas and electricity delivered in Baltimore City through pipes, wires or conduits and on all sales of service for the transmission of messages by non-residential telephones within the limits of Baltimore City, billed in 1947, a tax at the rate of five percentum (5%) upon the gross sales price thereof. Every person, firm, or corporation making any such deliveries or sales within the City of Baltimore shall collect said tax from the purchasers of said products or services and report the same, under oath, on or before the 15th day of the succeeding calendar month to the City Collector, upon forms to be supplied by him, and pay to the City Collector the amount collected from the said purchasers during the preceding calendar month. The tax imposed by this ordinance shall not apply to sales to the United States, the State of Maryland or the City of Baltimore, or any agency of any of them, nor shall it apply to hospitals, churches, charitable institutions and other non-profit organizations."

There are additional provisions in the Ordinance making it a misdemeanor to refuse to comply or to make a false return or refuse to pay the tax.

Section 28 of the new Baltimore City Charter, effective May 20, 1947, Section 303 of the 1938 Edition, provides that every ordinance enacted by the City shall embrace but one subject which shall be described in its title. This section is a counterpart of Section 29 of Article 3 of the Constitution of Maryland, and it has been held by this Court that the rules governing the determination of the question whether an act has been passed in accordance with that section of the Constitution are applicable to the determination of a similar question with respect to an Ordinance. *Mayor & City Council of Baltimore v. First M. E. Church,* 134, Md. 593, at page 603, 107 A. 351, at page 354, *Smith v. Standard Oil Co.,* 149 Md. 61, at page 68, 130 A. 181, at page 183. The last mentioned case by appropriate quotation applies to an ordinance the same reasons set out in *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413, why an act of Assembly must embrace one subject only and that subject must be described in its title. Among these reasons are to give the people advance notice of the character of the proposed legislation so that they may not be misled and to give all interested an opportunity to appear and be heard, as well as to advise members of the legislative body of the character of the proposed enactment and to give each of them an opportunity to intelligently watch its course through the legislative halls.

One of the ways in which a title may violate the constitutional or the charter provision, as the case may be, is that it may be misleading "by apparently limiting the enactment to a much narrower scope than the body of the act is made to compass". *Luman v. Hitchens Bros., Co.,* 90 Md. 14, at page 23, 44 A. 1051, at page 1052, 46 L. R. A. 393. That is the precise objection made to the title of the Ordinance here in question. The title indicates that the tax is imposed on all sales for consumption "for non-residential uses of artificial or natural gas and electricity." The body of the Ordinance, it is claimed, imposes the tax on all sales except those made under the residential schedules applicable to the City of

Baltimore on file with the Public Service Commission. It is contended that since the consumption of gas and electricity in appellant's apartment houses is for residential uses no one reading the title to the Ordinance would assume that it applied to such sales of gas and electricity, because the title restricts the tax to non-residential uses. When, however, the body of the Ordinance is examined, the exceptions do not include the appellant because it does not buy gas and electricity under the specific schedules excepted. Therefore, it is argued that the body of the act taxes the consumption of gas and electricity for both residential and non-residential uses, while the title purports to restrict it to non-residential uses.

It is suggested on behalf of the appellees that since the present residential schedules of the Consolidated Company, or similar schedules, have for a number of years been required to be on file with the Public Service Commission and since almost everyone in the City of Baltimore uses gas and electricity, and must have some knowledge, at least, of the rates and the schedules under which these rates are charged, a reasonable interpretation of the words "sales for consumption for non-residential uses" in the title of the Ordinance would be all such sales as are not made under what are known as the residential schedules. This is a plausible argument, but it does not stand examination. An apartment is a residence of the lessee, and the use of gas and electricity there is for residential purposes. This was indicated in the recent case of *Lewis v. Mayor and City Council of Cumberland*, 189 Md. 58, 54 A. 2d 319, 325, where this Court, speaking through Judge Markell, held that a minimum charge for water based on the family as a consumer unit was not an unreasonable classification, "though a residential building, including an apartment house, may also be a reasonable basis for classification, at least in other circumstances or in different rate schedules." And again "calling an apartment house a business does not alter the fact that it is an aggregation of dwellings.

It is not unreasonable to classify it with other dwellings rather than with hotels." The question involved in that case was entirely dissimilar from the one before us, but the quotations indicate (what could hardly be denied) that an apartment is as much a residence as a single dwelling. The rates charged may be different because of the larger quantity of gas or electricty used in an apartment house. Other factors enter in to this question, but neither these factors nor the rates charged change the essential character of an apartment. The conduct of an apartment house may be a business, and the appellant may be able, on account of the large amount of gas and electricity consumed, to get lower rates such as are usually given to large consumers. Nevertheless, the gas and electricity consumed is consumed for residential purposes. It would be ignoring basic facts to say that the very simple and easily understood definition used in the title to the ordinance can be twisted into meaning what the Consolidated Company does not sell under its residential schedules which are applicable only to single houses and two-apartment buildings.

It follows as a necessary corollary that the body of the Ordinance is broader than the title, and that the appellant and all other people interested could have inferred from the title only that they were not to be taxed. To that extent, therefore, the title is misleading and does not give a true picture of what the literal wording of the Ordinance seems to say.

There is, however, a principle of construction involved which is of frequent application by the Courts to legislative acts. That is the principle that inasmuch as the legislative body has the duty of enacting laws, the judicial part of the government should interfere as little as possible with that duty, and should not strike down any law passed by the legislature (or Ordinance passed by a City Council) which can be reasonably upheld. That principle was strongly expressed by Chief Judge Alvey in the case of *State v. Norris,* 70 Md. 91, 16 A. 445, 446, where, in a case involving a criminal Act, the Court

held that it would require a very liberal construction of the constitutional provision to maintain the sufficiency of the title, but nevertheless, the act was upheld on the principle that "this court has ever been reluctant to defeat the will of the legislature by declaring such legislation void, if by any construction it could possibly be maintained." A similar statement is to be found in one of the latest cases on the subject, *Neuenschwander v. Washington Suburban Sanitary Commission*, 187 Md. 67, 48 A. 2d 593. See also *McGlaughlin v. Warfield*, 180 Md. 75, 23 A. 2d 12, and cases there cited.

By the use of this principle, a number of acts where the title was narrower than the body of the statute have been upheld by this Court. Two examples will suffice. In the case of *Baltimore v. Deegan*, 163 Md. 234, 161 A. 282, the City sued the Sheriff of Baltimore City for certain fines, penalties and forfeitures which he had collected. An Act had been passed in 1931, Laws 1931, c. 37, the title of which stated that its purpose was to prohibit the payment of informers' fees. The body of the act, however, stated that all fines, penalties and forfeitures should be paid to the county or city where the same were imposed, with some exceptions. This part of the act was a repeal and reenactment, in the same words, of a previous statute. Prior to the act, this Court had held, that in the absence of any claims by informers, half of all fines, penalties and forfeitures were payable to the City and half to the State. *State v. Green*, 120 Md. 681, 87 A. 1101. After the passage of the Act of 1931, the Sheriff continued to pay the amount collected one-half to the City and one-half to the State, under the provisions of a section of the Baltimore City Charter which had been in continuous existence, and which gave one-half of the fines to the City. The City claimed that the Act of 1931, which directed that all fines, penalties and forfeitures should be paid to the City, repealed the Charter section, and that the State was no longer entitled to one-half of the fines. The Court held that the title to the Act indicated that its purpose

was only to prohibit the payment of informers' fees, that notwithstanding the specific provisions in the body of the Act, the title controlled, and that the Act would be held not to repeal the previous law, although interpreted literally it would do so. In so holding the Court said, "Indeed it is at least doubtful whether the act would not be open to constitutional objection under article 3 sec. 29, of the Constitution, if it were necessary to give it the construction contended for by appellant." [163 Md. 234, 161 A. 283.] In the case of *Buck Glass Co. v. Gordy,* 170 Md. 685, 185 A. 886, the appellant was a manufacturer of glass bottles which it sold in large quantities to sellers of milk and beer. The emergency gross receipts tax imposed by Chapter 188 of the Acts of 1935 imposed a tax, according to the title, "for the privilege of engaging in the business of selling tangible personal property at retail." In the body of the Act there was an explicit definition that all sellers of goods to consumers in whatever quantities were taxed. The Court determined that because of the restriction in the title, the statute could not properly be construed to include among the sellers to be taxed, producers or dealers selling in gross quantities as this was not selling at retail. In that case, as in the case of *Baltimore v. Deegan, supra,* the title was held controlling. The construction of the Act was that the definitions had purposes within the scope of the title, and were not invalid as necessarily extending beyond it. The Court said that anyone reading the Act with its title while it was in process of enactment would probably have inferred that this was the intended scope of the tax. If we apply the same rule of construction to the Ordinance before us, we find that its intention was to tax only sales for consumption by non-residential uses. The appellant does not come within that classification, and, therefore, the tax does not apply to it. The fact that there are explicit exceptions in the Ordinance of those buying under the enumerated schedules, does not exclude residential users who do not buy under those schedules. The test is not whether purchases are made under sched-

ules other than those mentioned. It is whether such purchases are for residential use. The facts are to be considered, and not the rates paid, nor the price lists or schedules under which the commodities are purchased.

In view of this conclusion it becomes unnecessary for us to consider the point made by appellant, that if the Ordinance included its purchases, it was an unreasonable and arbitrary enactment because the classification made was not based upon natural reasons and produced a distinction between members of the same class. *Oursler v. Tawes*, 178 Md. 471, 13 A. 2d 763; *County Commissioners of Anne Arundel County v. English*, 182 Md. 514, 35 A. 2d 135, 150 A. L. R. 842. We hold that the Ordinance does not make this distinction between residential users in houses or two-room apartments and residential users in apartment houses, and, therefore, the question does not arise. The decree will be reversed and the case remanded for the passage of a decree directing an injunction to be issued in accordance with the prayers of the bill.

*Decree reversed and case remanded with costs to the appellant.*