MAGUIRE *v.* STATE ET AL.

[No. 109, October Term, 1948.]

*Decided March 30, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*David P. Gordon,* with whom were *Herbert Levy* and *Levy, Byrnes & Gordon* on the brief, for the appellant.

*Joseph D. Buscher, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for defendants on demurrer to the declaration in a suit for a declaratory judgment. The question is whether plaintiff, licensed as a plumber under sections 318-324 of Article 43 of the

Code of 1939, and section 290 of Article 56, is also required to obtain a license as a "construction firm or company" under section 291 (1947 Supplement). From a decision that he is required to do so he appeals.

Licenses are required for the purpose of regulation under Article 43 and for revenue under sections 290 and 291 of Article 56. For present purposes, therefore, sections 318-324 of Article 43 are not relevant. The question is whether a plumber is required to pay one license fee for revenue under section 290 of Article 56 or two under sections 290 and 291.

Chapter 704 of the Acts of 1916 is entitled "An Act * * * to add twenty-five additional sections to * * * Article 56 of the Annotated Code of Maryland, to follow Section 163, and to be known as Sections 164 [to and including] 188, said new sections providing for the licensing of Detective Agencies and Agents, Moving Picture Shows and Carnivals, Garages, Cash Registers and Adding Machines, Typewriting Machines, Commercial, Mercantile and Mutual Protective Agencies, Intelligence Offices and Employment Agencies, Laundries, Junk Dealers, Trading Stamp Companies, Wholesale Dealers in Farm Machinery, Soda Water Fountains, Livery Stables, Bowling Saloons, Storage Warehouses, Check Rooms, Cleaning; Dyeing and Pressing Companies, Shoe-Shining Parlors and Hat-Cleaning Establishments, Restaurants or Eating Places, *Plumbers and Gas Fitters, Construction Firms or Companies,* Non-resident Wholesale Tobacco Dealers and Non-resident Wholesale Liquor Dealers." [Italics supplied]. Sections 183 and 184 became sections 290 and 291 in the Code of 1939. The Maryland Tax Revision Commission of 1939 recommended that sections 290 and 291 and most of the other license requirements of the Act of 1916 be repealed, and remarked that section 291 was probably an unconstitutional discrimination between residents and non-residents. Report of Commission, pp. 92-98-99-107. *Cf. State v. Case,* 132 Md. 269, 272, 103 A. 569; *Ward v. Maryland,* 12 Wall. 418, 20 L. Ed. 449. The recommendation to repeal sec-

tions 290 and 291 was not followed, but in 1941, c. 53, section 291 was amended to remove the discrimination. For present purposes the 1941 amendment is immaterial.

Sections 290 and 291 provide:

### "PLUMBERS AND GAS FITTERS

"290. Each person, firm or corporation, not holding a trader's license, operating or conducting the business of a plumber or gas fitter, shall before doing so, take out a license therefor, and shall pay an annual license fee for each place of business so operated, graduated as follows:

"In cities or towns of less than 5,000 inhabitants, for each place of business ................... $ 5.00

"In cities or towns of more than 5,000 inhabitants, and less than 10,000 inhabitants, for each place of business ............................. $10.00

"In cities or towns of more than 10,000 inhabitants, for each place of business ............ $15.00

### "CONSTRUCTION FIRMS OR COMPANIES

"291. Any person, firm or corporation accepting orders or contracts for doing any work on or in any building or structure, requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet-iron, galvanized iron or piping, tin, lead, electric wiring or other metal, or any other building material, or who shall accept contracts to do any paving or curbing on sidewalks or streets, public or private property, using asphalt, brick, stone, cement, wood or any composition, or who shall accept an order for or contract to excavate earth, rock, or other material for foundations or any other purpose, or who shall accept an order or contract to construct any sewer of stone, brick, terra-cotta, or other material, shall be deemed to be carrying on the business of construction.

"Each person, firm or corporation, who shall carry on the business of construction as mentioned in this section, shall before doing so, first take out a license therefor and pay an annual license fee of $15.00; provided, however,

this section shall not apply to persons, firms or corporations doing a construction business the gross amount of whose orders accepted and executed does not exceed Five Thousand Dollars ($5,000) per annum." [The captions are part of the original Act of 1916.]

In the opinion, of the lower court the case is stated thus: "Are plumbers and gas fitters required to take out three separate annual licenses to conduct their business? That is the question posed by this suit for a declaratory judgment.

"The plaintiff, a master plumber in Baltimore City since 1930, holds a master plumber's certificate under sections 318 to 325 [324] of Article 43 of the Code. These provisions are in exercise of the police power of the State to regulate trades and occupations in the public welfare. He pays one license fee under this law.

"He pays a second annual license fee under section 290 of Article 56, subtitle 'Plumbers and Gas Fitters,' which is a revenue measure requiring plumbers and gas fitters to take out either a trader's or plumber's license. The fee is regulated according to the size of town in which the business is conducted. The plaintiff pays $15.00 annually to do business in Baltimore City.

"There is a third license fee prescribed by section 291 of Article 56, and it is this provision of the law that is the subject of this litigation. The pertinent provisions are: 'Any person * * * accepting orders or contracts for doing any work on or in any building or structure requiring the use of galvanized iron, metallic piping * * * or any other building material * * * shall be deemed to be carrying on the business of construction.'

"The annual fee under this section is $15.00, without regard to the size of the city or town in which the licensee does business, unless the gross annual business is less than $5,000.00. The sub-title of this section is 'Construction Firms or Companies', and it was first enacted in 1916 as section 184 of Chapter 704. It followed immediately after the section sub-titled 'Plumbers and Gas Fitters' when originally enacted.

"From the time this law went on the statute books in 1916 until recently no effort was ever made by any State Comptroller or other official to apply its provisions to plumbers and gas fitters and require them to take out this third license. The present State Comptroller has been engaged in a campaign to enforce the various license statutes and other revenue producing laws. He was advised by the Attorney-General that this section of the law was applicable to the plaintiff and others similarly situated. Demand was made for the license fees under section 291 for the years 1944 to 1947, inclusive. The plaintiff refused to pay and filed this suit.

"The Comptroller contends that the language of the law is plain, clear and free from any ambiguity; that plumbers came within its plain provisions, as they are naturally large users of metallic piping and galvanized iron. While the plaintiff admits he may be literally covered by the words used in the law, he maintains it never was the intention of the Legislature to tax him under two separate consecutive sections of the law, and that the provisions of section 291 apply to a business distinct in character from that described in section 290; further, that since the license fee has never been collected from plumbers over all the years since its enactment, it should not now be applied to this business under the doctrine of continuous administrative construction.

"The rules of construction and interpretation of statutes have often been stated by our Court of Appeals. The meaning and intent must be sought in the language of the law itself. Courts cannot surmise legislative intent contrary to the letter of the statute. The interpretation must be according to the ordinary and natural import of the words used without resort to subtle or forced meanings to extend, limit or alter the operation of the enactment. Words should not be inserted or omitted to ascertain legislative intent where the language used is clear."

After thus stating the case and the rules of construction, the opinion construes sections 290 and 291:

"Applying these principles to sections 290 and 291, it is apparent that the words used are plain and free from ambiguity. The words employed are in every-day use and their meaning is obvious. If the Legislature meant the two sections to be mutually exclusive it did not say so. It could have done so easily. If the intention was to exclude plumbers and gas fitters from Section 291 this could have been done by simply inserting the words 'excluding plumbers and gas fitters.' These words are not in the law and the courts may not add language to give a new meaning. 'We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists.' *Howard Contracting Co. v. Yeager,* 184 Md. 503, 511 [41 A. 2d 494, 498]."

We agree with the lower court's statement, but not with its application, of the rules of statutory construction. This court has endeavored to adhere to the meaning of words and not to follow different trends by treating words as mere counters in an exercise in semantics or hurdles to be jumped in a quest for "legislative intent" in a wordless limbo of speculation about "the meaning of meaning," the Zeitgeist and other pretexts for judicial legislation. *Bosley v. Dorsey,* 191 Md. 229, 237, 60 A. 2d 691, 694-695; *State Tax Commission v. Potomac Electric Power Co.,* 182 Md. 111, 115-116, 32 A. 2d 382; *Celanese Corporation v. Davis,* 186 Md. 463, 470-471, 47 A. 2d 379; *Saunders v. Maryland Unemployment Compensation Board,* 188 Md. 677, 683, 53 A. 2d 579, 581; *Tucker v. American Smelting & Refining Co.,* 189 Md. 250, 257-258, 55 A. 2d 692, 695; *Crider v. Cullen,* 191 Md. 723, 731-732, 63 A. 2d 618, 622; cf. *Statutory Interpretation, Radin,* 43 Harvard Law Review 863; A note on *"Statutory Interpretation," Landis,* 43 Harvard Law Review 886; *The Plain Meaning Rule, Jones,* 25 Washington University Law Quarterly 2. It is true, as has been said and is illustrated by the instant case, that determination of the "plain and unambiguous meaning" of words is often the result of interpretation. We think there is a real, though

not precise, difference between such interpretation and conscious departure from words in pursuit of a disembodied "legislative intent".

Adherence to the meaning of words does not require or permit isolation of words from their context. "* * * the meaning of the plainest words in a statute may be controlled by the context. A statute should be so construed that all its parts harmonize with each other and render them consistent with its general object and scope." *Pittman v. Housing Authority,* 180 Md. 457, 463-464, 25 A. 2d 466, 469. "* * * it is the most natural and general exposition of a statute to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers." *Coke upon Littleton,* p. 381a. "If it be true that it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, there is an equal duty to restrict the meaning of general words, whenever it is found necessary to do so, in order to carry out the legislative intention." *Reiche v. Smythe,* 13 Wall. 162, 164, 20 L. Ed. 566. "It is an old and familiar rule that 'where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' *Pretty v. Solly,* 26 Beav. 610, per Romilly, M. R.; *State v. Commissioner* [*of Railroad Taxation*], 37 N. J. L. 228. This rule applies wherever an act contains general provisions and also special ones upon a subject which, standing alone, the general provisions would include. *End. Interp. of Statutes,* 560." *United States v. Chase,* 135 U. S. 255, 260, 10 S. Ct. 756, 757, 34 L. Ed. 117. "It is unquestionably true that the statutory definition supplies the final test of those who are within the class upon which the license tax is imposed, but to ascertain its meaning the language of that portion of the statute

must also be given a reasonable construction, which here simply means that if the words be susceptible of two interpretations, the construction should be in harmony with the manifest intent of the act, and should not lead to some absurdity, repugnancy, or injustice. *4 Cooley on Taxation* (4th ed.), 1693. Even a clause, containing the statutory definition of the class within the scope of the act, cannot be wrested from its context and be considered as a thing apart." *Kolb v. Burkhardt,* 148 Md. 539, 543-544, 129 A. 670, 672.

In the light of the context we reach a construction opposite to the lower court's. The Act of 1916 in 23 sections (164-186) provided for licensing 23 businesses. Each license was provided for in a separate section, and each business was briefly mentioned in the title and in a caption identical (or in two instances substantially identical) with the title. As construed by the lower court the business licensed under section 290 [originally 183], "Plumbers and Gas Fitters," is a duplication of part of the business licensed under section 291 [originally 184], "Construction Firms or Companies." It is not contended that there is any other such duplication in any of the 23 sections. This alleged duplication is claimed to have been effected by the statutory definition of "construction" in section 291. The title of the act and the captions do not disclose duplication in "Plumbers and Gas Fitters" and "Construction Firms or Companies" or suggest that any one of the 23 license taxes is a duplication of another. The definition in section 291 can be given effect without including plumbers or gas fitters. It must be so limited by its context (including the captions) and by the title of the act. *Buck Glass Co. v. Gordy,* 170 Md. 685, 688-691, 185 A. 886; *Brooklyn Apartments v. Maryor and City Council of Baltimore,* 189 Md. 201, 55 A. 2d 500. In *Burroughs Adding Machine Co. v. State,* 146 Md. 192, 197, 126 A. 127, 129, the title of the Act of 1916, as "licensing cash registers and adding machines," was held sufficient because the only reasonable meaning of this "awkward and inaccurate expression is that one of the

purposes of the act was to provide for a license tax on persons selling these machines. *In State v. Case,* 132 Md. 269, 103 A. 569, the title of the Act, as licensing "Construction Firms or Companies," was held sufficient, as applied to individuals, because "firm" (in the title) is the plural of "person" (in the act). Aside from the constitutional requirement as to the title, we think the reasonable construction of the definition of "construction", under the caption "Construction Firms or Companies" in section 291 and in juxtaposition with "Plumbers and Gas Fitters" in section 290, is that it covers miscellaneous construction work, within the words of the definition, but not plumbers or gas fitters. No reason has ever been suggested, and none occurs to us, why of all the businesses covered by any of these 23 license taxes plumbers and gas fitters alone could have been intended to be subject to two of the 23 taxes.

This construction, thus arrived at, makes it unnecessary to decide whether, in case of doubt, the same result might have been reached on the basis of uniform administrative construction for over thirty years. It may be noted, however, that the administrative construction of another section of the Act of 1916 has been followed by this court, *Burroughs Adding Machine Co. v. State, supra,* and that administrative construction of sections 290 and 291 gains weight from the fact that the same officials issue licenses under both sections and, if those sections could be otherwise construed, should have required every applicant for a license under section 290 to take out two licenses, one under section 290 and one under section 291.

*Judgment reversed, with costs, and new trial awarded.*