ROBERT LEE BAKER *v.* STATE OF
MARYLAND

[No. 220, September Term, 1968.]

*Decided February 19, 1969.*

*August L. Lundquist* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

## FAILURE TO CHARGE AN OFFENSE

*Appellate Review*

On appeal from a conviction by a jury in the Circuit Court for Anne Arundel County and sentence of 3 years to run consecutively with a sentence then being served, the appellant for the first time raises the point that the count of the indictment under which he was convicted did not charge an offense. Md. Rule 725b reads:

> "Defenses and objections based on defects in the institution of the prosecution or in the indictment,

other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion before trial. Such motion shall include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment to charge an offense shall be noticed by the court at any time during the proceeding. Any defense or objection capable of determination without the trial of the general issue may be raised before trial by motion."

By Rule 5i "court" includes the Circuit Court for any county but does not include this Court. Thus there is no authority by Rule 725b for this Court to notice, at any time during the proceeding, lack of jurisdiction or failure of the indictment to charge an offense. At the close of all the evidence the appellant moved for a judgment of acquittal and the motion was denied. We must determine whether the lower court erred in denying the motion. *Williams v. State,* 5 Md. App. 450. By Rule 1085 this Court ordinarily will not decide any point or question not tried and decided by the lower court but the Rule expressly provides: "Where jurisdiction cannot be conferred on the Court by waiver or consent of the parties, a question as to the jurisdiction of the lower court may be raised and decided by this Court whether or not raised and decided in the lower court." We do not think that a court exercising criminal jurisdiction has the power, in a jury trial, to allow a case to go to the jury, or in a court trial to make a finding of guilt, or in either case to impose sentence, under an indictment which charges no offense. See *Putnam v. State,* 234 Md. 537, note 1 at 540-541. We believe that the question of the failure of the indictment to charge an offense is a matter of jurisdiction and that, therefore, Rule 1085 permits appellate review whether or not the question was tried and decided below.

*The Offense Charged*

The case went to the jury on the second count of the indictment. It charged that the appellant "* * * unlawfully did at-

tempt to violate the narcotic law, to wit; to smuggle narcotics into the Maryland House of Correction; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." There is no "narcotic law" in this State which makes it a crime, in the precise terms of the count, "to smuggle narcotics into the Maryland House of Correction." But it is clear from the record that the lower court, the State and the appellant assumed that the statute which the count charged the appellant attempted to violate was Art. 27, § 122A of the Maryland Code. The court so instructed the jury and there were no exceptions to the instructions. The statute [1] designates certain items, *viz*: anything to effect the escape of a prisoner lawfully detained in a place of confinement within the State, any intoxicating beverage, any stimulating, sedative, narcotic drug or dangerous drug as defined by Art. 27, § 307.[2] With reference to these items it creates

---

1. The statute was enacted by Ch. 330, Acts 1961 and repealed and re-enacted with amendments by Ch. 58, Acts 1963. The amendments were of a housekeeping nature, making no substantive changes. As amended it reads:

"Whoever delivers or procures to be delivered, or has in his possession with intent to deliver, to a person legally detained and confined in any penal institution, reformatory or other place of confinement within the State, or whoever deposits or conceals in or about the institution, or upon any land appurtenant thereto, anything to effect the escape of a prisoner or inmate lawfully detained therein, any intoxicating beverage, or any stimulating, sedative, or narcotic drug, or dangerous drug as defined in § 307 of this article, except upon written prescription of the regularly appointed physician thereof, with the intent that a convict shall obtain or receive it, and whoever receives from a convict anything to effect the escape of a prisoner or inmate lawfully detained therein, any intoxicating beverage, or any stimulating, sedative, or narcotic drug, or dangerous drug as defined in § 307 of this article with intent to convey it out of the institution without written permission of the superintendent of prisons or the officer in charge of said penal institution or place of confinement, shall be guilty of a misdemeanor * * *."

2. Under § 307 "dangerous drug" means "any drug intended for use by man which, because of its toxicity or other potentiality for

offenses in three categories with respect to places of confinement within the State:

1) The first category pertains to the delivery of such items.
   Whoever
   a) delivers, or
   b) procures to be delivered, or
   c) has in his possession *with intent to deliver*
   any such item [3] to a person legally detained and confined in any place of confinement within the State shall be guilty of a misdemeanor.

2) The second category pertains to the concealing of such items.
   Whoever
   a) deposits, or
   b) conceals
   any such item in or about the institution, or upon any land appurtenant thereto, *with the intent that a convict shall obtain or receive it,* shall be guilty of a misdemeanor.

3) The third category pertains to the receipt of such items. Whoever receives any such item from a convict, *with the intent to convey it out of the institution,* without written permission of the superintendent of prisons or the officer in charge of the place of confinement, shall be guilty of a misdemeanor.

It is clear that the offenses proscribed in the second and third categories require a specific intent but, as to the offenses proscribed in the first category, only that of possession, requires a specific intent.[4] The offenses of delivering or procuring to be

harmful effect, or the method of its use, or the collateral measures necessary for its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drugs."

**3.** Drugs upon written prescription of the regularly appointed physician of the place of confinement are excepted as to both the first category and the second category but not as to the third category.

**4.** Mere unlawful possession of a narcotic drug as defined in Art. 27, § 276(o) is a crime proscribed by § 277.

delivered proscribed in the first category require no specific intent. Therefore, if the count under which the appellant was convicted charged an offense, it could only be, with regard to § 122A, that he attempted to commit the offenses of the delivery of narcotics to a convict or of procuring them to be so delivered, for the count alleged no specific intent as required in the other offenses under the section. In charging the substantive offense the general rule is that the criminal intent of the accused must be alleged when the criminality of an act depends upon the intent with which it was done, as when the statute makes such intent one of the constituent elements of the offense. 4 *Wharton's Criminal Procedure* (Anderson) § 1773, p. 576. That is to say, when an act is by statute made criminal only if done with a particular intent, the intent must be alleged and proved according to the terms of the statute. *Joyce on Indictments*, 2d Ed., p. 450. See also *Hochheimer Criminal Law*, 2d Ed., § 102, p. 123; 41 Am. Jur. 2d 951; 42 C.J.S. 1027.[5] It follows that when the indictment charges an attempt to commit an offense, an essential element of which is a specific intent, the required specific intent of the offense charged as attempted must be averred. "Specific intent to commit the offense charged in an indictment, of which intent is an essential ingredient, is not sufficiently averred by an allegation that the accused did the acts charged in an attempt to commit the offense charged, when such acts also constitute an entirely distinct and separate offense * * *." 4 *Wharton's Criminal Procedure, supra,* § 1773, p. 577.

The appellant was convicted of attempting "to violate the narcotic law, to wit: to smuggle narcotics into the Maryland

---

5. "Criminal intent, when it is an essential element of the offense charged, need not always be alleged in specific terms, but may be averred in general terms in many instances. Intent may also be sufficiently alleged by the use of equivalent words, especially those used in the statute denouncing the offense. The essential elements of the crime may be so alleged that criminal intent is clearly and necessarily imported therefrom." 4 *Wharton's Criminal Procedure, supra,* § 1773, p. 577. When a generic term may be used to describe an offense, for example that A did "rob" B, all the elements of the offense are included in the term and considered as averred. See *Putnam v. State, supra.*

House of Correction." [6] The narcotic laws of this State are usually considered to be those codified in Md. Code, Art. 27, §§ 276-306D, under the title "Crimes and Punishments", subtitle, "Health-Narcotic Drugs." [7] It may be cited as the "Uniform Narcotic Drug Act," § 305. We find no provision in the Uniform Narcotic Drug Act expressly proscribing the offense here charged. Nor can we construe the language used in charging the offense to allege attempted possession or control of a narcotic drug, § 277, assuming there are such offenses as attempted possession and attempted control, or the other offenses created by the Uniform Narcotic Drug Act. If the count here charged an offense, we agree with the conclusion obviously arrived at by the lower court, that it could only be the offense of attempting to violate Art. 27, § 122A. We must next determine whether the violation specified, charged as attempted, was an offense under that statute. It is patent that as expressly stated it was not. The word "smuggle" does not appear in the statute. By our finding as to the lack of allegations of the required specific intents, the only offenses under the statute that in any event could be said to be properly charged as attempted are those as to the delivery or procuring to be delivered a narcotic drug to a person legally confined in a penal institution or place of confinement.

We are here considering whether the indictment charged an offense. This question is distinguished from the question, when

---

6. The indictment stated that the offense was "contrary to the form of the Act of the Assembly in such case made and provided and against the peace, government and dignity of the State." We are not aware of an Act of the Assembly of Maryland making such an attempt as expressly charged or an attempt to violate Art. 27, § 122A, a crime. But in the absence of a statutory proscription an attempt to commit an offense constitutes a common law misdemeanor. *Fisher v. State,* 1 Md. App. 505. We think the language here indicating that the offense was contrary to an Act of the Assembly may be considered as surplusage.

7. Art. 27, §§ 307-313 pertains to "dangerous drugs"; § 313A to "harmful inhalants"; §§ 313B and 313C to a "amphetamines" and "barbiturates". These do not appear to be included in the definition of "narcotic drugs" under § 276(o) unless found to be so by the State Board of Health as therein provided.

the indictment does charge an offense, whether it was fatally defective in failing to allege such other facts as would enable the accused to prepare his defense, *State v. Lassotovitch,* 162 Md. 147, for an accused has the constitutional right to be informed of the accusation against him to prepare his defense, *Seidman v. State,* 230 Md. 305. See *Briscoe v. State,* 3 Md. App. 462. It is no longer open to controversy in this State that as to the question whether an indictment charges an offense, "in indictments for statutory offenses in describing the act, the doing of which, or omitting to do which, constitutes the crime, it is sufficient to describe said act in the words of the statute * * * In other words, the language of the statute, when used, is a sufficient description of the crime; and if the statute contains all the elements necessary to constitute a crime, the indictment is sufficient to describe the offense, if laid in the words of the statute." *State v. Lassotovitch, supra,* at 150. In the instant case there is no statute making the attempt to violate § 122A a crime, the attempt being a misdemeanor at common law, but the indictment would have charged an offense, if the crime alleged to have been attempted had been described in the words of the statute, as the statutory words do, in themselves, fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements and ingredients necessary to constitute the offense intended to be punished. So, as the indictment did not use the statutory words, we must determine whether the language in the indictment—"violate the narcotic law, to wit: to smuggle narcotics into the Maryland House of Correction" —is the equivalent of the statutory words—"* * * delivers or procures to be delivered * * * to a person legally detained and confined in any penal institution * * * within the State * * * any narcotic drug * * *."

The general rule is that an indictment charging an offense denounced and defined by statute should be as fully descriptive of the offense as is the language of the statute and should allege every substantial element of the offense as defined by the statute without material diversion or departure from the fair intendment of the terms of the statute, and with reasonable particularity of time, place and circumstances.

"It is not necessary that an indictment contain all

the language of the statute on the subject; all that must be alleged is that which is requisite to charge the offense, or that which constitutes the essential ingredients of the offense as denounced by the statute. Words may be omitted if they are necessarily implied from those contained in the charge. * * * An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import if the defendant is thereby fully informed of the particular offense charged, and the court is enabled to see therefrom on what statute the charge is founded. * * * The statutory offense should be laid with the certainty of the statutory terms but should not be prolix, involved and obscure." 4 *Wharton's Criminal Procedure,* § 1794, pp. 618-619 and § 1796, pp. 622-624.

When the offense is sufficiently particularized, it is not necessary to specify the exact section of the statute or to set forth the law which is alleged to have been violated. But there must be such specification of language as to bring the charge within the particular portion of the statute on which it is based, *ibid,* § 1795, pp. 619-620. There is some authority that in an indictment for an attempt to commit a crime, the offense which the accused is charged with having attempted need not be set out as fully and specifically as would be in an indictment for the actual commission of such offense, but it is established that it must be clearly stated and identified, *ibid,* § 1793, p. 616.

We cannot say that the indictment here was as fully descriptive of the offense alleged to have been attempted as is the language of the statute. While we are not persuaded by the appellant's argument that "smuggle" can only mean the clandestine introduction of goods into the United States, the importation of which is prohibited without the payment of duty, neither can we accept the State's argument that "smuggle" is the equivalent of the statutory words. We cannot say in using the word "smuggle" there was no material diversion or departure from the fair intendment of the words of the statute. Nor do we think

that it encompassed the essential ingredients of the offense de-
nounced, for even if it be considered to mean "deliver" or "pro-
cure to be delivered" it would not follow that the delivery would
necessarily be to a person "legally detained or confined" in the
Maryland House of Correction and delivery or the procuring
to be delivered to such a person is an essential element of the
crime proscribed. The statute would not be violated if the nar-
cotic drug was delivered or procured to be delivered to an official
of the Maryland House of Correction or to a visitor to that insti-
tution, for example. Although the language of the indictment was
not prolix or involved, it was certainly obscure as to the statute
alleged to have been violated. That the lower court concluded,
perhaps by a process of elimination, that the offense attempted
could only have been under § 122A because no other statute was
in anywise applicable, does not mean that the indictment properly
charged an offense. We feel that there was no such specification
of language as to bring the charge within the particular por-
tion of the only statute on which it could have been based.[8] We
find that the count under which the appellant was convicted did
not charge an offense. Therefore the lower court neither had the
power to permit the case to go to the jury on that count nor to
impose sentence upon a verdict of guilty thereon and the judg-
ment must be reversed.

The first count of the indictment under which the appellant
came to trial charged attempted bribery, the third count charged
conspiracy to bribe and the fourth count charged conspiracy
to violate the narcotics law. They were disposed of by grant of
motions for judgment of acquittal during the trial. We have
found that the second count did not charge an offense. Thus
the appellant cannot again be tried on that indictment and our

---

8. We cannot ascertain from the record why the State's Attorney
preferred not to draw the indictment in the words of the statute.
We note, however, that if the indictment properly charged an
offense, it would be immaterial that the offense charged was not
the one he had in mind when he drew the indictment. 4 *Wharton's
Criminal Procedure, supra,* § 1796, pp. 620-621. And we also note
that if particulars had been furnished on demand of the appellant
it would not have sufficed, as a bill of particulars forms no part of
an indictment and hence cannot make an otherwise defective in-
dictment good. *Seidman v. State, supra,* at 312.

mandate may not direct a new trial. This is not to say, however, that the appellant may not be tried under such new indictment as may be found against him, properly charging offenses on which he had not been placed in jeopardy theretofore.

*Judgment reversed.*