491 A.2d 587

**John SMITH, Jr.**

v.

**STATE of Maryland.**

**No. 485, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 8, 1985.

John L. Kopolow, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Richard D. Warren, State's Atty. for Wicomico County and Davis R. Ruark, Deputy State's Atty. for Wicomico County, Salisbury, on brief), for appellee.

Submitted before ROSALYN B. BELL, KARWACKI and ROBERT M. BELL, JJ.

ROSALYN B. BELL, Judge.

John Smith, Jr., was tried, convicted and sentenced by the Circuit Court for Wicomico County. The charges against him included a number of sex offenses and assault-related incidents involving three members of his family.

Smith appeals and raises these questions:

"1. Was Appellant denied a determination of his competency to stand trial that satisfied the requirements of due process of law?

"2. Did the trial court lack jurisdiction to try and to sentence Appellant for child abuse?

"3. Must Appellant's conviction for second degree rape be vacated because it is based upon an act that also resulted in an incest conviction?"

We affirm the decision of the trial court, with the exception of one count. Criminal Information No. 12435 charged Smith with: (1) three counts of incest and one count of child abuse concerning Mary Pearl Smith, and (2) two counts of incest involving Rosetta Smith. He was charged by Criminal Information No. 12436 with five assault-related offenses. Finally, Criminal Information No. 12437 contained allegations of second degree rape, second degree sex offense, incest and assault and battery upon Roberta Smith. At a bench trial on March 20 and March 27, 1984, the court found Smith: (1) guilty of all counts under Criminal Information No. 12435; (2) not guilty of all charges under Criminal Information No. 12436; and (3) guilty of second degree rape and incest in Criminal Information No. 12437. The second degree sex offense and assault and battery merged into other counts.

Mary Pearl Smith, appellant's daughter and one of the victims in Criminal Information No. 12435, was born on April 5, 1954. She testified that as a result of her sexual intercourse with appellant in 1969, she gave birth to a child, Roberta Smith (who is the victim in Criminal Information No. 12437). Ms. Smith told the court that she gave birth to a second daughter-granddaughter by appellant, named Mary Christmas Smith in 1977.[1] Mary Pearl Smith recounted that she had intercourse with her father two to three times per week over the years. At the time of trial, she had last had sexual relations with her father in October 1983. She said that when the first incident occurred, she complained to her mother. Her father threatened her when he learned of the complaint and told her that he would kill both Mary Pearl and her mother if she told anyone about the incidents. Ms. Smith knew that appellant also had sexual intercourse with her sister and explained that "you did it or you'd get your ass whipped."

---

1. This child was born December 25, 1977.

Rosetta Smith, Mary Pearl Smith's sister and another daughter of appellant, related that she began to have sexual intercourse with appellant when she was between 11 and 12 years old and that this continued on a regular basis until she left home. According to Rosetta, she engaged in sexual intercourse with her father approximately twice a week, sometimes more. As a result of these activities, she became pregnant and Cindy Lois Smith was born in February 1970. The relationship continued and she gave birth to Roberta Smith in September 1971. Rosetta stated that she did not put appellant's name on the birth certificate when Cindy was born because her father had indicated he would "whup" her if she used his name. Upon further questioning, Rosetta said she left home "because she was tired of being threatened and hit," and because Cindy had reached the age that she, Rosetta, had been when first molested and did not want the same thing to happen to her daughter.

Roberta Smith, Mary Pearl's daughter and appellant's daughter-granddaughter, alleged that she had sexual intercourse with appellant in August 1983, when she was 13 years old, and became pregnant as a result. As related by Roberta, appellant forced her to have intercourse with him every day or every other day. These matters came to light because of her pregnancy.

Appellant denied being the father of Roberta Smith and denied having sexual relations with his daughters.

On rebuttal, John Smith, appellant's son and the brother of Mary Pearl and Rosetta, testified that he had seen his father engage in intercourse with both of his sisters.

The court imposed concurrent sentences of ten years each on the convictions in Criminal Information Nos. 12436 and 12437. For each conviction in Information No. 12435, it imposed concurrent sentences of five years, to run consecutively to the ten-year sentences in Nos. 12436 and 12437.

## COMPETENCE

At the start of the trial, counsel for appellant withdrew the prior plea of not guilty by reason of insanity in light of

the mental examination and report of Dr. Reeves. A plea of not guilty was entered and a jury trial waived. The court then questioned appellant in detail about his understanding of a jury trial and whether he waived it voluntarily. Satisfied with appellant's answers, the trial judge heard the testimony.

The first witness, Mary Pearl Smith, was interrupted by appellant several times during her testimony. The court cautioned him and he responded appropriately. At the conclusion of the case-in-chief, appellant testified and specifically denied all the allegations made. He also denied ever having been a patient in a mental hospital. After both sides rested, the court announced that, because of the strange circumstances and conflicting indications of whether appellant had been committed to a mental institution,[2] it would continue the case to inquire about the details.

■ There is a presumption that a person is competent to stand trial. *Hill v. State*, 35 Md.App. 98, 369 A.2d 98 (1977). An individual is incompetent to stand trial if he is unable "(1) To understand the nature or object of the proceeding; or (2) To assist in one's defense." Md. Health—General Code Ann. § 12–101(d) (1982, 1984 Cum. Supp.).

■ Appellant points to *Hill v. State, supra,* to support his position that due process requires not only the recognition that competency is a continuing consideration in a trial, but also that a judge must remain continually aware of the issue.

"[W]henever the issue of competency of an accused to stand trial is raised during the course of a jury trial, the trial judge *must* determine upon testimony and evidence presented on the record ... whether the accused 'is unable to understand the nature or the object of the

---

2. The State claimed that appellant had been a patient in a mental institution. The source of this information was not hospital records, but was based on hearsay.

proceedings against him or to assist in his defense.' The provision of [Sec. 12–102(a) of the Health General Article] that the court must make determination 'upon testimony and evidence presented on the record' is mandatory.

"Unless and until the trial court makes a determination beyond a reasonable doubt upon testimony and evidence presented on the record that the accused is able to understand the nature or the object of the proceeding against him and to assist in his defense, the trial may not begin or if begun may not continue." (emphasis in original).

35 Md.App. at 104–05, 369 A.2d at 102.

■ With this predicate, appellant posits that the court was warranted in raising the issue of competence, but that two violations of his rights then occurred: (1) The court gathered and evaluated the evidence outside the presence of defendant and without providing him an opportunity to confront and cross-examine the witnesses who presented it; and (2) The court did not inquire into or expressly rule on the two-pronged test for incompetency.

We agree with appellant's statement of the law, but not with his perception of what occurred in this case. Counsel for appellant did not suggest at any time that his client was unable to assist in his defense, nor did he indicate that his client did not understand the nature or object of the proceedings. At one point, appellant voiced his objection to one of the victims' statements. Counsel seeks to rely on that outburst to show incompetence. On the contrary, however, the very outburst indicates appellant's understanding of the proceedings and his competence. Counsel also points to what he characterizes as appellant's rambling comments to the court. This ignores appellant's coherent replies during his testimony in which he denied the allegations made against him and placed the responsibility for Mary Pearl's and Rosetta's pregnancies on others. Furthermore, if counsel had become concerned that his client was unable to assist in the defense, he could and no doubt would have mentioned it to the court.

In a discussion between the court and counsel after the testimony, the court expressed concern that it remained uncertain whether appellant had stayed in a mental hospital. The court reiterated the doctor's opinion that Smith was competent to stand trial, but referred again to the hospitalization, stating:

"... I was just wondering if there had been any information on it."

The Deputy State's Attorney advised the court that the officer had checked with the family and that they were unaware of any such hospitalization. The colloquy concluded with the court saying

"Gentlemen, I know it's irregular, but I am going to defer ruling in this case until I check out a couple of things. I am going to try to find out whether this man has been in the hospital in the past before I rule."

Md. Health—General Code Ann. § 12-103(a) (1982, 1984 Cum.Supp.) provides in pertinent part:

"If, before or during a trial, the defendant in a criminal case appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial."

In the case *sub judice,* neither appellant nor his counsel alleged incompetence. The only other way the issue could arise was if the court made the preliminary triggering decision that appellant appeared incompetent to stand trial, but the court did not make that determination. In fact, when trial resumed on March 27, 1984, the court explained its concern:

"My hesitancy about this, you will recall when we heard the evidence last week, I think I fell into the trap that I often accuse defense-oriented psychiatrists of falling into, the idea that anybody who does things such as this must have some mental problem, because although the defendant himself said that he had not been in any mental

institution, there has been some confusion about that to start with, and, frankly, I wanted to satisfy myself that he was not a mental patient, and basically I have satisfied myself of that."

Since appellant's lack of competence to stand trial was not effectively raised, the alleged violations of due process could not have occurred.

## COUNT VI OF CRIMINAL INFORMATION NO. 12435

Count VI, labelled "CHILD ABUSE" on the cover page of Criminal Information No. 12435, alleged that in January 1969, appellant:

"... feloniously, wilfully and maliciously abuse[d] Mary Pearl Smith, a minor child under the age of eighteen ... while having the care, custody and responsibility for [her] supervision...."

Immediately below this charge, the State's Attorney cited Md.Code Ann., Art. 27 § 35A (1957, 1971 Repl.Vol.).

Appellant asserts that, because Art. 27 § 35A did not become effective until July 1, 1970, Count VI failed to charge any cognizable offense and the court lacked jurisdiction to try him for child abuse. Furthermore, he claims that no Maryland statute prior to § 35A designated "child abuse as a criminal offense." Thus, appellant urges that because amendments to penal laws cannot operate retroactively, *see Oberlin v. State,* 9 Md.App. 426, 435, 265 A.2d 275, 280 (1970), his conviction and sentence on Count VI must be vacated. *See Pedzich v. State,* 33 Md.App. 620, 624–25, 365 A.2d 567, 569–70, *cert. denied,* 279 Md. 684 (1976); *Baker v. State,* 6 Md.App. 148, 250 A.2d 677 (1969). Although appellant did not advance this argument at trial, he contends that it is a matter of jurisdiction and, therefore, may be raised at any time. Before we address this argument, a brief review of the evolution of the child abuse law in Maryland is helpful.

In 1963, the Legislature enacted the first provision concerning child abuse, entitled "Assault on Child." The law provided that:

"Any parent, adoptive parent or other person who has the permanent or temporary care or custody of a minor child under the age of fourteen years who maliciously beats, strikes, or otherwise mistreats such minor child to such degree as to require medical treatment for such child shall be guilty of a felony, and upon conviction shall be sentenced to not more than fifteen years in the Penitentiary."

1963 Md.Laws, Ch. 743 at 1536, codified in Md.Code Ann., Art. 27 § 11A. The Act was amended the next year to provide for the reporting of instances of abuse and to create a central registry of reported cases. Note, *Maryland Laws on Child Abuse and Neglect: History, Analysis and Reform*, 6 U.Balt.L.Rev. 113, 116–17 (1976). In 1966, the age of a minor, for purposes of this statute, was raised from fourteen to sixteen. 1966 Md.Laws, Ch. 221 at 467. These amendments made only slight changes in the language quoted above. Hence, at the time of the incidents in this case, the only difference was that in 1969, a minor child was defined as one who was less than sixteen years old.

The title of the law was changed to "Child Abuse" in 1970, when the Legislature moved the provision to Md.Code Ann., Art. 27, § 35A. Not until 1973, however, did the General Assembly indicate the purpose of the statute. The amendment redefined a minor child as one under eighteen years of age, and stated:

"The General Assembly hereby declares as its legislative intent and purpose the protection of children who have been the subject of abuse by mandating the reporting of suspected abuse, by extending immunity to those who report in good faith, by requiring prompt investigations of such reports and by causing immediate, cooperative efforts by the responsible agencies on behalf of such children."

1973 Md.Laws, Ch. 835 at 1708–09.

In 1974, a specific proscription against sexual abuse first appeared and it continues in the current statute, which provides:

"A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary not exceeding 15 years."

Md.Code Ann., Art. 27, § 35A(b) (1982 Repl.Vol., 1984 Cum. Supp.).[3] Abuse is further described as:

"(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; or

(ii) Sexual abuse of a child, whether physical injuries are sustained or not."

*Id.* at § 35A(a)(2). These delineations were necessary as confirmed by the observation of the Court of Appeals in *State v. Fabritz*, 276 Md. 416, 423, 348 A.2d 275, 279 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976), that the original enactment, § 11A, "was not intended to reach acts of individuals not constituting ... an assault on a child." Hence, § 35A broadened the scope of prohibited conduct. *Id.* at 423–24, 348 A.2d at 280.

■ Appellant claims that the Information was defective because the crime was improperly called "child abuse" and the incorrect statutory section was cited. The caption in the charging document, however, does not determine the offense, *Busch v. State*, 289 Md. 669, 678–679, 426 A.2d 954, 959 (1981); *State v. Carter*, 200 Md. 255, 262, 89 A.2d 586, 589 (1952), nor is an incorrect statutory designation in a charging document fatal to the prosecution. *Vines v. State*, 40 Md.App. 658, 661–662, 394 A.2d 809, 811 (1978), *aff'd.* 285 Md. 369, 402 A.2d 900 (1979); *Sands v. State*, 9

---

3. This provision became effective October 1, 1984, and only the order of the sections differs from the prior enactment.

Md.App. 71, 78 n. 3, 262 A.2d 583, 587 n. 3 (1970). The issue before us does not involve the name of the offense or the statute number, but rather, concerns whether the Criminal Information states an offense under § 11A as it existed in 1969.

■ The Maryland Declaration of Rights, Art. 21, extends to an accused the right to be informed of the charges against him. "A claim that a charging document fails to charge or characterize an offense is jurisdictional and may be raised, as here, for the first time on appeal." *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985). An assertion that the indictment failed to comply with this standard "is a matter of jurisdiction and ... therefore, Rule 1085 permits appellate review whether or not the question was tried and decided below." *Baker v. State*, 6 Md.App. at 151, 250 A.2d at 680. On the other hand, "Where the claimed defect is not jurisdictional, it must be seasonably raised before the trial court or it is waived." *Williams v. State, supra.* We hold that the averments did not sufficiently charge and characterize an offense under § 11A as it existed in 1969 and, therefore, this Court properly may review whether the Information was valid according to the applicable law. We will explain.

■ Although Count VI tracks the language of the current statute, it must comply with the provisions of the law applicable when the offense occurred. Essentially, the statute in effect in 1969 required allegation and proof of the following elements:

(1) A parent, adoptive parent or other person,

(2) having permanent or temporary care or custody or responsibility for supervision,

(3) of a minor child (under the age of 16),[4]

(4) maliciously beat, struck, or otherwise mistreated the minor child,

---

**4.** A 1966 amendment increased the age of a minor under the statute from fourteen to sixteen years of age. 1966 Md.Laws, Ch. 221 at 467.

(5) to such a degree that medical treatment became necessary.

Md.Code Ann., Art. 27, § 11A(a) (1966).

Count VI of Criminal Information No. 12435 charged appellant with several of these factors, including that he had the care and custody of a minor child, Mary Pearl Smith, and that he maliciously abused her. The allegations of "abuse" could establish the element concerning mistreatment, *Pirner v. State*, 45 Md.App. 50, 56–57, 411 A.2d 135, 139 (1980), but the showing of resulting medical treatment was not mentioned. We need not consider, however, whether the necessity of medical treatment could be inferred from the charge that appellant "feloniously, wilfully and maliciously abuse[d] Mary Pearl Smith." The point was not raised below and, more importantly, the charging document did not comply with the age requirement. The Information defined a minor child as under eighteen, rather than sixteen. This overinclusive designation is unfortunate, as Mary Pearl Smith in fact was fifteen years old in 1969 and, therefore, a minor according to the applicable law. Despite this actuality, the failure of the information to state the appropriate age renders it void as not stating an offense.

Based on our conclusion that Count VI of Information No. 12435 did not adequately charge a crime under the applicable law, we hold that the conviction and accompanying sentence based on it must be vacated. The decision concerning this particular count, however, does not affect the sentence imposed on other counts. *Dunphy v. State*, 13 Md.App. 671, 673–75, 284 A.2d 631, 633–34 (1971); *Johnson v. State*, 2 Md.App. 235, 244, 234 A.2d 167, 172 (1967), *cert. denied*, 249 Md. 732 (1968).

## SECOND DEGREE RAPE AND INCEST

Charges of second degree rape and incest appeared in Criminal Information No. 12437, and appellant was convicted of both offenses. These counts arose from an act of sexual intercourse between appellant and Roberta Smith,

his 13-year-old daughter-granddaughter. Appellant contends that we must overturn the second degree rape conviction because any father found to have had intercourse with a daughter under 14 years of age would commit both incest and second degree rape. If the girl were not his daughter, however, he would commit only second degree rape. Based on this distinction, he reminds us that in *Henry v. State,* 273 Md. 131, 134 n. 1, 328 A.2d 293, 296 n. 1 (1974), the Court of Appeals said:

> "Where there is a specific enactment and a general enactment 'which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299 (1949)."

Appellant then posits that the Legislature must have intended the rape provision in Md.Code Ann., Art. 27, § 463(a)(3) (1957, 1982 Repl.Vol.) to apply to those acts of sexual intercourse which are not incestuous. Hence, appellant could only be convicted and sentenced under the specific enactment punishing incest.

■ This contention is akin to the merger of offenses pursuant to the Double Jeopardy Clause guarantee that a person shall not receive multiple sentences for the same crime. *Newton v. State,* 280 Md. 260, 263, 373 A.2d 262, 264 (1977), citing *United States v. Wilson,* 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975), and *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Under this doctrine, a court compares the elements required to establish each crime charged. If one offense includes the same elements as the other, plus an additional item, the "lesser" offense merges into the "greater." *Walker v. State,* 53 Md.App. 171, 190–91, 452 A.2d 1234, 1244 (1982), *cert. denied,* 296 Md. 63 (1983). A more difficult situation occurs when the offenses require proof of the same number of elements with neither

being a "greater" offense. *See id.* In this situation, a court determines the merger issue by evaluating the statutory language of each crime. The specific enactment becomes the offense for which the accused may be convicted, and the general provision applies only to those cases that remain outside the scope of the more precise language. *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299, 302 (1949); *Henry v. State,* 273 at 134 n. 1, 328 A.2d at 296 n. 1.

Appellant argues that in accordance with this latter distinction, the charge of incest constitutes a more specific crime than rape. As a result, he argues that the general prohibition against second degree rape should apply only to instances other than incest. We disagree.

As a preliminary matter, we note that appellant's quotation from *Maguire v. State, supra,* is incomplete. The Court of Appeals prefaced its explication of the specific-general rule with the phrase "where there is, in the same statute, a particular enactment, and also a general one. . . ." 192 Md. at 623, 65 A.2d at 302. Immediately after stating the distinction, the Court continued:

> "This rule applies wherever an act contains general provisions and also special ones upon a subject which, standing alone, the general provisions would include."

*Id.* citing *United States v. Chase,* 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890).

▮ Placed in context, the argument presented by appellant has no merit. Not only do the crimes of rape and incest appear in separate statutes, but upon comparison they each "[require] proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, —— (1932), citing *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911). To prove rape or incest the evidence must establish the following elements:

1. Second degree rape.

   a. vaginal intercourse with another person

(1) by force or threat of force *and* without the person's consent; or

(2) with knowledge that the person has a mental defect, or is mentally or physically incapacitated; or

(3) the person is under 14 years old *and* the perpetrator is at least four years older than the victim.

Md.Code Ann., Art. 27, § 463 (1957, 1982 Repl.Vol.).

2. Incest

a. carnal knowledge of a person

(1) within such a degree of kinship that State law prohibits marriage between the two persons.

Md.Code Ann., Art. 27, § 335 (1957, 1982 Repl.Vol.).

It is true that a violation of each statute occurs when a father commits second degree rape of a 14-year-old who is his daughter. The same scenario establishes the elements of both offenses, but the elements differ and neither provision includes the other. The applicable portion of the rape statute in this case requires proof that the victim was under 14 years old, and that the perpetrator was at least four years older than the victim; no family relationship need exist between the victim and the perpetrator. Incest, on the other hand, requires proof of the parties' relationship, but the age of the victim is not a factor, nor does it matter what the age difference between the parties is. Hence, a second degree rape of a 14-year-old non-relative would not establish incest, and incestuous activity between consenting adults would not constitute second degree rape.

Appellant argues that, because the facts in this case prove the elements of both offenses, the statutes are the same for purposes of the Double Jeopardy Clause and, therefore, he can be convicted only for one offense. The Supreme Court has rejected this view, adopting the language of the Massachusetts Supreme Court:

"A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under

either statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger v. United States, supra,* citing *Gavieres v. United States, supra,* quoting *Morey v. Commonwealth,* 180 Mass. 433 (1871).

Based on our observation that the crimes of second degree rape and incest each require proof of a different element than the other, and the Supreme Court's recognition that one transaction may violate two statutes, we conclude that appellant's separate convictions for these crimes did not violate the Double Jeopardy Clause.

JUDGMENT VACATED AS TO COUNT VI OF INFORMATION NO. 12435; JUDGMENTS AFFIRMED ON REMAINING COUNTS. COSTS TO BE PAID BY APPELLANT.